(112 So. 509)

No. 28462.

## BLANCHARD v. HABER.

March 28, 1927.

*(Syllabus by Editorial Staff.)*

1. **Certiorari** ☞64(1)—**Mandamus** ☞172—Whether suspensive appeal should be granted from order granting preliminary injunction is only question that can be decided on certiorari and mandamus to compel granting of such appeal (Act No. 29 of 1924).

On writ of certiorari and petition for mandamus to compel granting of suspensive appeal from order granting preliminary injunction, question whether preliminary injunction should have been granted and whether injunction should be perpetuated cannot be decided, in view of Act No. 29 of 1924.

2. **Partnership** ☞20—Verbal agreement between dentist and one owning dental instruments and office equipment, whereby each received half of profits, held to constitute "partnership."

Verbal agreement between owner of dental instruments and office equipment and dentist who assumed management of business, whereby each received half of net profits, *held* to constitute "partnership."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Partnership.]

3. **Contracts** ☞53—Under civil law, to constitute valid contract consideration must be proportioned to obligation (Civ. Code, art. 2464).

Under civil law, to constitute a valid contract consideration must be serious and not altogether out of proportion to corresponding obligation, in view of Civ. Code, art. 2464.

4. **Appeal and error** ☞458(3)—Defendant held entitled to suspensive appeal from order granting preliminary injunction restraining violation of employment contract, in view of its doubtful validity.

In suit to restrain dentist from violation of contract of employment prohibiting practice within five blocks of former employer's office after termination of employment, defendant *held* entitled to suspensive appeal from order granting preliminary injunction, in view of court's doubt whether contract would finally be declared valid.

Suit by Dr. F. A. Blanchard against Dr. M. F. Haber. A temporary injunction was granted, and a suspensive appeal was refused to defendant. On writ of certiorari and petition for mandamus to compel granting of suspensive appeal. Suspensive appeal ordered.

Daly & Hamlin, of New Orleans, for applicant.

St. Clair Adams, of New Orleans, for respondent.

O'NIELL, C. J. This is a proceeding by injunction to compel the defendant to obey the obligation assumed in the last paragraph of the following agreement had with the plaintiff, dated the 26th of September, 1925, viz.:

"Memorandum of Agreement.

"This agreement, made and entered into between F. A. Blanchard, party of the first part, and Dr. M. F. Haber, party of the second part, witnesseth:

"Whereas, the party of the first part desires the services of a dentist; and

"Whereas, the party of the second part, a dentist, desires to continue in the employ of the party of the first part:

"Now, therefore, it is mutually agreed between the said parties that the party of the second part shall continue in the employ of the party of the first part, his employment having been, and is, perfectly satisfactory to him, as a dentist, in the city of New Orleans, La., and, for his future services as such, shall receive the sum of $60 per week, for the signing hereof, payable weekly.

"It is further agreed that this contract shall be and remain in force for a period of 10 years, to be terminated by either party hereto by the giving to the other party a 30-day written notice of such intention.

"In consideration of the employment and the salary herein agreed to be paid to the party of the second part, and in further consideration of the association to be gained, and knowledge to be obtained, the great number of patients to come under the care while in the modern establishment of the party of the first part, it is agreed that, in the event the party of the second part leaves the employ of the party of the first part, or shall the party of the first part dispense with the services of the party of the second part, or for any reason this agreement should terminate, the party of the second part agrees that he will not, within a period of 10 years following such termination, engage or at-

tempt to engage, directly or indirectly, for himself or for others, in the practice of dentistry within five blocks of the then location of the United Dental Company's offices or establishment, and the party of the second part further agrees and so pledges himself not to solicit during those 10 years, either by writing, advertisement or word of mouth, the business of any of the patients of the said party of the first part."

Dr. Blanchard, suing on the contract, alleged that Dr. Haber had worked for him under the contract until the 8th of January, 1927, and then, having given 30 days' notice in writing as provided by the contract, quit his employment, and, in violation of the contract, began the practice of dentistry, for himself and for others, in the same block and on the same side of Canal street where he, Dr. Blanchard, was practicing denistry under the name and style of United Dental Company; and that he, Dr. Haber, had solicited, by writing and by advertisement and by word of mouth, the business of Dr. Blanchard's patients. The plaintiff prayed for and obtained from one of the judges of the civil district court a temporary restraining order forbidding Dr. Haber to practice dentistry at any place within 5 blocks from the United Dental Company's office, No. 936 Canal street, or to solicit, directly or indirectly, by writing, advertisement or word of mouth, the business of any of the patients of Dr. Blanchard, during the 10 years stipulated in the contract. At the same time the judge ordered Dr. Haber to show cause, on the sixth day after the date of the order, why a preliminary injunction should not be granted in conformity with the temporary restraining order.

Dr. Haber pleaded that the allegations of the plaintiff's petition did not show a cause or ground for injunction; and, reserving the benefit of the plea, Dr. Haber answered the rule to show cause why the injunction should not issue. He denied Dr. Blanchard's allegation that he, Dr. Blanchard, had been practicing dentistry at No. 936 Canal street under the name and style of United Dental Company since the 1st of September, 1925, and averred that the business was then owned entirely by Dr. Blanchard's sister, Mrs. Pateras, and that Dr. Blanchard was merely employed by her as manager of the business, until the 24th of January, 1927, on which day, which was only three days before this suit was filed, the plaintiff bought the business from his sister. Defendant averred that he was employed not by Dr. Blanchard but by Mrs. Pateras, and that Dr. Blanchard signed the contract sued on as manager for and on behalf of Mrs. Pateras; that she alone paid defendant's salary, and that, on the 8th of January, 1927, she discharged him, summarily and without notice. He averred that, since June, 1926, he had earned and Mrs. Pateras had paid him regularly $80 a week for his services, and that the contract sued on had been tacitly abrogated by Mrs. Pateras and Dr. Blanchard and by him, Dr. Haber, and that he had not been employed under the contract since June, 1926. He admitted that he had opened a dental establishment and was practicing dentistry at No. 908 Canal street, and averred that he had the right to do so, after he was discharged— as he alleged—by Mrs. Pateras.

Defendant specially pleaded that the contract sued on was illegal, null and not in effect, for the following reasons:

(1) That there was no mutuality of obligations, and no serious or lawful consideration for the stipulations contained in the last paragraph.

(2) That the contract was violative of article 167 of the Civil Code, forbidding any free servant to bind himself by a contract for the hire of his services for a longer period than 5 years.

(3) That the obligations assumed by him, Dr. Haber, in the last paragraph of the con-

tract, were contracted on a potestative condition on the part of the other party to the contract.

(4) That the stipulations in the last paragraph of the contract were stipulations in restraint of trade and for stifling competition, and were therefore against public policy.

(5) That the contract, if theretofore valid, was tacitly abrogated and canceled by mutual consent of the parties in June, 1926, when Mrs. Pateras commenced paying and defendant commenced receiving a salary of $80 a week for his services.

(6) That the contract, if theretofore valid and if not abrogated in June, 1926, was breached by Mrs. Pateras when she discharged defendant summarily and without previous notice.

(7) That the contract was not transferred by Mrs. Pateras to Dr. Blanchard when she sold him the business, on the 24th of January, 1927, or at any other time, and, therefore, that, if any one had a right of action under the contract, Mrs. Pateras alone had it.

The case was allotted to another judge of the civil district court—other than the one who had issued the temporary restraining order—and, after hearing the evidence on the rule nisi, he granted the temporary injunction as prayed for, on plaintiff's furnishing a bond for $6,000. The defendant asked for a new trial, which was refused, and then, giving the notice required by the fifth section of the Act 29 of 1924, asked for a suspensive appeal, which also was refused. The case is before us on a writ of certiorari and petition for mandamus to compel the granting of a suspensive appeal from the injunction.

[1] The Act 29 of 1924, p. 42, seems to have abolished the right to dissolve an injunction on bond, and, perhaps in lieu thereof, provides for the granting of a suspensive appeal from an order for a preliminary injunction. The same section of the statute provides that a devolutive appeal may be taken, as a matter of right, from an order granting, or continuing, or refusing, or dissolving, or refusing to dissolve a preliminary injunction. A devolutive appeal in such case, of course, affords no immediate relief, which is the only relief ever wanted in the matter of a preliminary or temporary injunction. The fifth section of the statute therefore provides also that the court may, in its discretion, allow to any party enjoined a suspensive appeal from the order granting the preliminary injunction, and that the court may, in its discretion, also stay all further proceedings in the case until the appeal has been decided, on the appellant's giving bond for such sum as the court may determine as being sufficient to pay such damages and costs as the plaintiff in the injunction suit, or other party in interest, may sustain by reason of the suspension of the order of injunction by the appeal; and this section of the statute provides also that, if a suspensive appeal is refused by the court that issued the injunction, the appellate court having jurisdiction, or any judge thereof, may allow the suspensive appeal in aid of its appellate jurisdiction, and that such an appeal shall have precedence in the appellate court, but shall not stay the proceedings in other respects in the court below, unless such stay of proceedings be ordered by the court granting the appeal. The sixth section of the act declares that nothing contained in the act shall be construed as limiting the authority of the Supreme Court to issue any writ, order or process allowed under its supervisory power and control over the other courts.

The relief prayed for by the defendant in this suit is the mildest that could be asked of us under the statute; that is, that, on defendant's furnishing a bond to protect the plaintiff against all damages and costs, the preliminary injunction shall be held in abeyance until this court shall have decided, on

the appeal from the order granting the injunction, whether it should have been granted. The defendant proposes that, instead of having the plaintiff under bond to pay such damages as he, the defendant, may have suffered if it should be decided finally that the preliminary injunction should not have been granted, he, the defendant, should be allowed to give bond to pay such damages and costs as the plaintiff may have suffered by the temporary staying of the order for injunction, if it should be decided that the order for injunction was rightfully granted.

The learned counsel for Dr. Blanchard contends, and we agree with him, that we are not called upon in this proceeding to decide whether the injunction should be perpetuated, or even to decide now whether the preliminary injunction should have been granted. All that we can decide, in this proceeding, according to the statute, is whether the defendant should be granted a suspensive appeal from the order granting the preliminary injunction. The question whether the preliminary injunction should have been granted will come up for decision on the appeal from the order, if we grant the appeal; and, even then, the question whether the injunction should be perpetuated will have to await a final decision of the case on its merits. That is, indeed, a circuitous method of procedure; but it is what the statute requires, and we have only to obey the statute. It is necessary, though, for a proper disposition of the question to be decided in this proceeding, that we investigate the case on its merits; otherwise, this proceeding for the relief which the statute allows the complainant in such 'case would be futile.

[2] The only testimony heard on the trial of the rule to show cause why the preliminary injunction should not issue was that of the plaintiff, that of his sister, Mrs. Pateras, and that of the defendant; and the only other evidence offered was the notarial act of sale by Mrs. Pateras to Dr. Blanchard of the instruments and equipment in the dental office and her half interest in the business of the firm styled United Dental Company, dated the 24th of January, 1927.

From 1919 until the end of 1923, or beginning of 1924, Mrs. Pateras, who is not a dentist, was the sole owner and proprietress of the business conducted in the name of the United Dental Company, at 936 Canal street, in New Orleans. Dr. Blanchard, who is a licensed dentist, was then practicing in Little Rock, Ark. In the latter part of 1923, or early part of 1924, Dr. Blanchard, at the request of Mrs. Pateras, came to New Orleans and assumed the management of the business of the United Dental Company. The agreement between them was that, in consideration for his professional skill and services, he should receive half of the net profits of the business. They testified that their agreement, which was verbal, constituted a partnership; and we agree with them that it was a partnership. Mrs. Pateras, however, continued to own the instruments, furniture and equipment in the establishment; and the defendant testified that he often heard her say that the business was entirely hers and heard her complain of interferences by Dr. Blanchard. That is denied by Dr. Blanchard and Mrs. Pateras, and is a matter of no importance, because they alone knew what their business arrangement was; and the proof that it was a partnership is borne out by the deed by which, only 3 days before this suit was filed, Mrs. Pateras sold to Dr. Blanchard all of the instruments, furniture and equipment in the establishment and her interest in the business and the good will of the business theretofore conducted by them.

Dr. Haber was first employed as a dentist in the establishment by Mrs. Pateras on the 1st of September, 1923. Dr. Blanchard and Mrs. Pateras both testified that, in signing the contract sued on, Dr. Blanchard was act-

ing for the partnership composed of himself and Mrs. Pateras. They both admitted that, for several months before the employment ended, they were paying Dr. Haber $80 a week for his services. She testified that she did not discharge Dr. Haber, that he quit without giving any notice, and that she did not know why he had quit. Dr. Blanchard also admitted that the averment in his petition, that Dr. Haber quit "after giving petitioner 30 days' written notice as provided by the terms of said contract," was not true —and that Dr. Haber gave no previous notice of his intention to quit. Dr. Blanchard's testimony in that respect shows that he did not insist upon Dr. Haber's carrying out the contract, and leaves a strong inference that the contract had been already tacitly abrogated, as contended by Dr. Haber. Dr. Blanchard testified that, on the morning of the 8th of January, 1927, he met Dr. Haber on the street, in conversation with another doctor, and Dr. Haber invited him, Dr. Blanchard, to have a cup of coffee. While they were drinking their coffee, Dr. Haber announced that he was leaving, and said that he would rather work for Dr. Blanchard than for any one else, but that his employment in the establishment was otherwise not agreeable—meaning, as we infer, that his relations with the other member of the firm were not agreeable. Dr. Haber then said that he was going into business for himself, but did not say where he would establish his office. He said that he might first visit his relations in New York. Dr. Blanchard then asked him not to quit his employment, and offered to give him $300 with which to take a vacation of three weeks in New York, and offered to increase his salary to $100 a week and to pay him a bonus sufficient to make his income $6,000 a year. Dr. Blanchard said that, on Dr. Haber's return from New York, he, Dr. Blanchard, would be in exclusive charge of the United Dental Company's business, and that everything would then be satisfactory to Dr. Haber. The latter replied that he had already bought the necessary dental equipment for opening an office; whereupon Dr. Blanchard offered to buy the equipment for what it had cost. Dr. Haber said that he would consider the proposition, and the conversation ended. There was no intimation by Dr. Blanchard to Dr. Haber that he was not at liberty to quit his employment and practice his profession wherever he might see fit.

Dr. Haber testified that, on the morning of the 8th of January, 1927, another dentist came, for the first time, to work in the establishment, and that Mrs. Pateras told him, Dr. Haber, that the newcomer would take his place and that his services were no longer wanted. That testimony is corroborated in some measure by the statement of Dr. Blanchard that Dr. Haber said that, though he would rather work for Dr. Blanchard than for any one else, his relations with the establishment were otherwise not agreeable.

Assuming that the contract was not invalid for the first, second, third, or fourth reason urged in the defendant's pleading, the testimony leaves a very grave doubt as to whether it was considered in force, or not tacitly abrogated, before the defendant's employment ended.

Another consideration of great importance is that Dr. Blanchard and Mrs. Pateras both admitted that the contract was not made by Dr. Blanchard individually, but for the partnership; and the partnership's interest, or Mrs. Pateras' interest, in the contract was never formally assigned to Dr. Blanchard. The property transferred by the deed dated the 24th of January, 1927—three days before the suit was filed—is described as the furniture and equipment in each room of the establishment, "and the good will of said business formerly conducted by said vendor and purchaser as the United Dental Com-

pany, at said 936 Canal street, together with the card cases and unfinished business." Mrs. Pateras testified that, in the verbal agreement between Dr. Blanchard and her, on the 8th of January, 1927, it was understood that a transfer of the good will of the business would include this contract with Dr. Haber; but it seems very doubtful that there was any such understanding, in view of the fact that Dr. Haber had quit his employment on that morning, and in view of the omission of this contract from the list of property and rights transferred by Mrs. Pateras to Dr. Blanchard only 3 days before he brought this suit against Dr. Haber for violation of the contract.

[3] The contract would be held valid in some jurisdictions, because at common law any lawful consideration for a contract is deemed sufficient. Under the civil law, although, as at common law, the question of adequacy of the consideration is a matter for the parties to determine before entering into the contract, nevertheless the consideration must be serious and not altogether out of proportion to the corresponding obligation. In that respect, article 2464 of the Civil Code refers specifically only to the contract of sale; but, in Murray v. Barnhart, 117 La. 1030, 42 So. 489, it was held that the principle was one of civil law, as old as the civil law itself, and applicable to all contracts; and the French commentators were cited as authority therefor. Aside from the requirement of the civil law that a contract must have a serious consideration, article 2034 of the Civil Code declares that an obligation contracted on a potestative condition on the part of him who binds himself is null; and article 2024 defines the potestative condition as being one which makes the execution of the agreement depend upon an event which one of the parties may, at his will, bring about or hinder. In the contract sued on, although it was said that it should be and remain in force for 10 years, it was also provided that either party was at liberty to terminate the contract at any time by giving 30 days' notice in writing to the other party. There was no mutuality of obligations in that respect because Dr. Haber could not terminate the contract without incurring the penalty of being put out of business for 10 years, whereas Dr. Blanchard was at liberty to terminate the contract at any time, and at the same time to gain the advantage of putting Dr. Haber out of business as a competitor. There is therefore considerable doubt that the contract will be held valid in the final judgment to be rendered in this case. We do not mean that such stipulations as this contract contains for the protection of the employing doctor or dentist against an unfair advantage being taken by the employee, in the matter of competition in business, are not valid stipulations in a contract containing mutual obligations. A very similar contract was held valid by the Supreme Court of Colorado, in Freudenthal v. Espey, 45 Colo. 488, 102 P. 280, 26 L. R. A. (N. S.) 961; but a similar contract was declared invalid by the Supreme Court of Georgia, in Rakestraw v. Lanier, 104 Ga. 188, 30 S. E. 735, 69 Am. St. Rep. 154, and by the Supreme Court of Illinois, in Tarr v. Stearman, 264 Ill. 110, 105 N. E. 957.

[4] Because of our grave doubt that the contract will be declared valid in the final judgment to be rendered in this case, and because of our doubt that the contract was deemed in force by the parties during the last 6 months before the defendant's employment ended, and because the contract was not formally assigned to the plaintiff by the firm or by Mrs. Pateras, we have concluded that the defendant should be granted a suspensive appeal from the order for the preliminary injunction.

It is contended by the learned counsel for Dr. Blanchard that the damages which he

may suffer if the injunction is suspended by an appeal cannot be compensated or measured in money. The damages which Dr. Haber might suffer if the injunction were kept in force until a final decision of this case on its merits cannot be calculated or estimated any more accurately than the damages can be estimated which Dr. Blanchard may suffer by a suspensive appeal from the order for the preliminary injunction. It is not possible for Dr. Blanchard to suffer as great a loss by a temporary suspension of the writ of injunction as Dr. Haber might suffer from an enforcement of the injunction until final judgment is rendered in the case. Dr. Haber is 33 years of age, has had 10 years of experience in his profession, and has a wife and two children depending upon him for support. If forbidden for several months to practice his profession within the 100 city squares described in the contract, which area includes most of the commercial area of the city, Dr. Haber will perhaps be forced to try his fortune in some other city, rather than await a decision of this case on its merits. Between the two alternatives, therefore, we have concluded that it is more equitable that Dr. Haber should be allowed a suspensive appeal, on giving bond, than that he should be deprived of the means of earning a livelihood until this case is finally decided on its merits, and be depending in the meantime upon the bond of $6,000 which Dr. Blanchard has given to repair whatever damages Dr. Haber may have suffered.

The rule which was issued by this court, directed to the judge of the civil district court, is now made peremptory, and, accordingly, it is ordered that the judge grant the defendant, Dr. Haber, a suspensive appeal from the order for injunction, so far as it prohibited the defendant's practicing dentistry within 5 blocks from the office of the United Dental Company, upon his furnishing bond for such sum as the judge may fix. The plaintiff, Dr. Blanchard, is to pay the costs of these supervisory proceedings.