*235 On Rehearing
TATE, Justice ad hoc.
The facts are fully stated in our original opinion. Rehearing was granted upon the application of certain creditors,[1] insofar as this Court affirmed the trial court’s dis-allowance of payment of their claims from the proceeds of the judicial sale of the community assets. These creditors’ claims are for services rendered to the community business between the date (July 15, 1952) the community was dissolved by the judgment of separation from bed and board,[2] and the date (April 13, 1954) of the judicial sale of the property formerly belonging to the community.
The classification of these debts as separate or as entitled to be paid from community proceeds is of more than academic interest to these creditors, for according to their allegations certain other creditors of Mr. and/or Mrs. Johnson individually will be paid in preference to them if we do not recognize the present creditors’ claims as payable directly from the proceeds of the community rather than by theJohnsons individually.
Upon thorough reconsideration of the issues raised by this appeal, we are unable to see that we were in error in our original determination that the debts in question, were as a result of the continued operation after the community’s dissolution of’ the chief community asset, a tourist business, as a going concern, so that the liabilities thus incurred were not community debts payable as such directly from the proceeds of the community property.
In Uchello v. Uchello, 220 La. 1061, 58 So.2d 385, we held that attorneys’ fees in contested partition proceedings may be fixed and payable from the mass by consent of the parties. .Since the present claims for attorneys’ fees (see footnote 1 above) were with the consent of Mr. and Mrs. Johnson fixed by the court, the Uchel *237 lo case is cited in support of the contem tion that the attorneys’ fees herein should be denoted as community rather than separate debts. The Uchello case, concerning partition of a solvent community, is not in point. It did not hold that the parties may by their own consent confer community status upon certain separate debts to the prejudice of others.
As we recognized in our original opinion, the services of the creditors before us were rendered to the going business formerly owned to the community, although not to the community itself. The record shows that the services so performed by these creditors (see footnote 1 above) clearly benefited this community business and were largely responsible for its value when sold at partition sale: The advertising services of Industrial Electrical and Industrial Outdoor Display are reflected to be indispensable to a tourist sight-seeing service such as the present: The attorneys’ fees preserved the value of the community business by settling and forestalling claims against it.
Our careful consideration of these circumstances and of the entire record has led us to the conclusion that the operation of the community business by the husband with the consent of the other co-owner of the assets, his wife, was in the nature of a partnership operation, LSA-C.C. Arts. 2801, 2805, 2806, 2809, 2811, 2813; although no longer a community enterprise, LSA-C.C. Art. 2807. Considering that these co-owned assets were operated as a business entity, essential requirements for a partnership relationship of consent or -intention, LSA-C.C. Art. 2805, Labat v. Labat, 232 La. 627, 95 So.2d 129; Glover v. Mayer, 209 La. 599, 25 So.2d 242, to make and to share profits from the use of the partners’ assets combined for the purpose, LSA-C.C. Arts. 2801, 2811, are shown by the record and pleadings herein to have been met by the mutual agreement of the former spouses that the husband should continue for their mutual profit to operate the community’s tourist business after the judicial dissolution of the community and until its partition or sale could be satisfactorily arranged.
Business relationships with similar characteristics have been held to have the status of partnerships with the legal incidents thereof, although not characterized as such by the participants and often resulting from informal or oral agreement. Ingersoll Corp. v. Rogers, 217 La. 79, 46 So.2d 45; Posey v. Fargo, 187 La. 122, 174 So. 175; J. P. Barnett Co. v. Ludeau, 171 La. 21, 129 So. 655; Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228; Ludeau v. Avoyelles Cotton Co., 164 La. 275, 113 So. 846; Graham Paper Co. v. Lewis, 159 La. 151, 105 So. 258; Cameron v. Orleans and Jefferson Ry. Co., 108 La. 83, 32 So. *239 208;[3] Cf., Blanchard v. Haber, 163 La. 627, 634, 112 So. 509.
Under the civil law, as consistently noted and applied by the jurisprudence of Louisiana, a partnership is a legal entity, separate and distinct from the persons who compose it, with its own rights, obligations, and causes of action. Trappey v. Lumbermen’s Mutual Cas. Co., 229 La. 632, 86 So.2d 515, and cases cited therein. Con sistent therewith, “The partnership property is liable to the creditors of the partnership, in preference to those of the individual partner * * LSA-C.C. Art. 2823. The assets of a partnership are to be applied to payment of the partnership debts before disbursement to the partners or to their individual creditors. Posner v. Little Pine Lbr. Co., 157 La. 73, 102 So. 16; Toelke v. Toelke, 153 La. 697, 96 So. 536; Guess & Albin v. Ham, La.App. 2 Cir., 183 So. 61, writ of certiorari denied.
We therefore conclude that although the creditors’ claims now before us • are not obligations of the community formerly existing - between the Johnsons, they are, nevertheless, partnership obligations of the going business of “Johnson’s Crescent City Tours” during the period it was operated as a partnership, and thus are entitled to be paid from the proceeds of the partition sale before said proceeds are distributed to the co-owners.
The attorneys’ fees sought were fixed by the court, and the record reflects them to be reasonable in relation to the services performed.
The evidence is somewhat confusing as. to the exact amount due upon the claims of the other two creditors, the affiliated firms of Industrial Electric, Inc., and Industrial Outdoor Displays, a partnership.
*241 Without detailed discussion, we shall simply say that the record does not evidence error in the District Court’s award to Industrial Electric, Inc., of $401.-04.[4] Insofar as this firm seeks recognition of its claim upon Mr. Johnson’s promissory note dated December 17, 1953 (after dissolution of the community) in the amount of $737.50 (which included the then past due debt due by the community and/or partnership to both creditor firms, the affiliated corporation and partnership), the somewhat ambiguous evidence indicates that such note was in the nature of collateral security furnished by Mr. Johnson individually for partnership debts. It was not, as claimed, a novation extinguishing the former partnership liabilities and creating a new one, for such novation is never presumed and must be clearly intended, LSA-C.C. Art. 2190, as is not the case here.
The indebtedness to the remaining creditor, Industrial Outdoor Displays, resulted from execution after dissolution of the community of a contract by Mr. Johnson to lease a large outdoor display sign needed by the community tourist business. The proof shows that the latter business was furnished the use of said sign between October 18, 1953, and April 13, 1954 (the date of the partition sale). The monthly rental of $80 thus due by the community business is $466.67, in which amount the claim of Industrial Outdoor Displays is recognized.
For the reasons assigned, the judgment of the trial court is amended so as to decree the payment as ordinary claims against the proceeds of the property sold herein at partition sale (that is, against the corpus before distribution to Mr. and Mrs. Johnson) the following-claims:
Grady C. Durham, Attorney.....$2461.14
Malcolm L. de la Houssaye, Attorney ...................... 2500.00
Industrial Outdoor Displays, a partnership .................. 466.67
Any additional claims of Industrial Electric, Inc. or Industrial Outdoor Displays are dismissed without prejudice, insofar as against Lytton Paul Johnson individually.
As amended, the judgment appealed from is affirmed. All costs to be taxed to the mass, see Kelly v. Giles, 167 La. 287, 119 So. 51; Soules v. Soules, 104 La. 796, 29 So. 342.
Amended and affirmed.
*243 HAMITER, J., concurs with written reasons.
SIMON, J., dissents with written reasons to be filed.
McCALEB, J., dissents being in agreement with the views expressed- in the original opinion.

. These creditors are: (a) Malcolm L. de la Houssaye and Grady O. Durham, attorneys at law who represented Mr. Johnson and Mrs. Johnson, respectively, insofar as we disallowed any award to them for services performed subsequent to the date of the judgment of separation. (Services rendered prior to that date were recognized and paid as community liabilities) ; (b) Industrial Electric, Inc. and Industrial Outdoor displays, affiliated companies, the claims of which are for services performed to the sight-seeing service which was the property of the community formerly existing between Mr. and Mrs. Johnson. Tne District Court recognized the former Company’s claim to the extent of $401.04 as a community liability arising from a contract executed prior to dissolution of the community.

. This judgment decreed a separation from bed and board between the parties “reserving unto both parties right to a partition of the property belonging to the community formerly existing between them.” The present partition suit was instituted subsequent to this judgment.

. In some of these cases, the relationship to which the incidents of a partnership status has been attached has been denoted as a “joint adventure” or “joint venture.” Since most such joint adventures fall within the codal definition of a “special commercial partnership”, LSA-C.C. Article 2827, the utility in Louisiana of the term has been questioned. O’Neal, “An Appraisal of the Louisiana Law of Partnership”, 9 La.L. Rev. 307, 333 (1949); Comment, “The Business Joint Venture in Louisiana”, 25 Tul.L.Rev. 382, 383 (1951). Although possessing the substantive aspects of a partnership, the joint adventure is sometimes distinguished: “The legal relation of joint adventure * * * results from the undertaking by two or more persons to combine their property or labor in the conduct of a particular line of trade or general business, for joint profits, creating the status of a partnership, although the facts do now show formal partnership. While a joint adventure is not identical with a partnership, it is analogous to a partnership and is controlled largely by the principles or rules applicable to partnerships. But there is no joint adventure where an actual partnership exists * * * ”, Ault & Wiborg Co. of Canada v. Carson Carbon Co., 181 La. 681, 688, 160 So. 298, 300; “ ‘ [W] hile a copartnership is ordinarily formed for the transaction of a general business of particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction,’ ” McCann v. Todd, 203 La. 631, 14 So.2d 469, 471.

. The total indebtedness claimed by this firm for services totalled $534.67 (not including the promissory note given by Mr. Johnson personally as collateral security after dissolution of the community.) However, the evidence does not reflect proof of unexplained items of $195.70 and $25.75, charged on July 31, 1953 and Dec. 30, 1953, respectively.