Percy Saint, Atty. Gen., Percy T. Ogden, Asst. Atty. Gen., and A. L. Ponder, Dist. Atty., of Amite (E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

BRUNOT, J. The appellant was indicted, prosecuted, convicted, and sentenced for selling intoxicating liquor in violation of the Hood Act (Act No. 39 of Ex. Sess. 1921). From conviction and sentence he appealed.

There are no bills of exception in the record, no assignments of error, no error patent on the face of the record, and appellant has not filed a brief. Therefore nothing is presented for our consideration. State v. Gebbia, 121 La. 1083, 47 So. 32; State v. Pullen, 130 La. 249, 57 So. 906; State v. William, 130 La. 283, 57 So. 927; State v. Abrams, 151 La. 623, 92 So. 138.

The verdict, judgment, and sentence are affirmed.

---

(106 So. 567)

No. 27048

### WHITE v. WHITE.

(Nov. 30, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Divorce ⚖️253—In settling community estate on divorce, court will assume, in absence of contrary showing, that commissions collected by husband soon after divorce filed were earned before suit filed.**

In settlement of community estate, in absence of showing on part of husband to contrary, court will assume that sums collected by husband as commissions very soon after divorce suit was filed were earned before suit was filed, as husband is better able than wife to show when commissions were earned.

**2. Divorce ⚖️253—Husband held not chargeable for value of live stock which strayed or died through no fault of his.**

In settling community estate on divorce, husband was not properly charged with value of farm implements and live stock in his possession, where he sold whatever he could sell at best price obtainable and accounted for proceeds, and remainder either were lost or died, through no fault of husband.

**3. Divorce ⚖️253—Husband, pledging bonds for community debt, on sale of bonds, chargeable only with surplus.**

Where husband pledged bonds for community debt, and bonds were thereafter sold by pledgee, in settling of community estate husband was chargeable, on divorce, only with difference between amount of debt and amount bonds sold for.

**4. Divorce ⚖️253—Charge against husband for automobile held not excessive, in view of his use thereof for two years after divorce suit filed.**

Where husband used car, costing $963 new, for two years after divorce suit was filed, and sold it for $200, *held* that, in settling of community estate, he was properly charged $450 for such car.

**5. Divorce ⚖️253—Husband held not chargeable for price of car sold before divorce suit filed.**

In settlement of community estate on divorce, husband was not properly chargeable for price of car he had sold before divorce suit was filed.

**6. Divorce ⚖️253—Husband held not chargeable for rentals collected which he paid to wife as alimony during pendency of suit.**

In settlement of community estate on divorce, husband was not chargeable with rentals collected after suit was filed but which he paid to wife as alimony during pendency of suit.

**7. Divorce ⚖️253—Husband held chargeable with reasonable rental value of matrimonial domicile, which he occupied alone after divorce suit filed.**

In settlement of community estate, husband was properly chargeable with reasonable rental value of matrimonial domicile, which he alone occupied for 19 months after divorce suit was filed.

**8. Divorce ⚖️253—Husband held entitled to be credited for payment made from his separate fund for purchase of community property.**

Where husband collected debt owed him before he was married, and paid it on property bought by community, *held* that, on settlement of community estate, husband was entitled to be credited for such amount, regardless of any enhancement or depreciation in value of property

after payment was made, where property was sold in settlement proceedings for more than amount of such payment.

**9. Contracts ⊚125—Not against public policy to agree to pay notary and appraisers more than allowed by fee bill.**

It is not against public policy for parties concerned in the matter to agree to pay notary and appraisers more than compensation allowed by the fee bill, which, under Act No. 101 of 1870, is still in force.

**10. Divorce ⊚253 — Husband chargeable for wife's attorneys' fees in obtaining dissolution of community.**

In settling of community estate, husband is chargeable for attorneys' fees incurred by wife for obtaining dissolution of community, but not for services in subsequent litigation over settlement of accounts.

Appeal from Civil District Court, Parish of Orleans; Hugh C. Cage, Judge.

Suit by Mary Cook White against Alexander Campbell White for separation from bed and board, for care and custody of minor children, for partition of community property, and for alimony, in which defendant allowed judgment to go against him by default. Two years after decree of separation, defendant filed petition for absolute divorce, whereupon plaintiff filed reconventional demand for divorce, for permanent care and custody of children, for alimony, and for inventory and sale of community property to effect a partition. Judgment for plaintiff, and defendant appeals. Amended, and case remanded, with directions.

Woodville & Woodville, of New Orleans, for appellant.

Dart & Dart, of New Orleans, for appellee.

O'NIELL, C. J. The plaintiff sued her husband for a separation from bed and board, at the same time asking for the care and custody of her minor children, for a partition of the community property, and for alimony. The defendant allowed judgment to go against him by default. The court gave the plaintiff a decree of separation from bed

and board, gave her the care and custody of her children, and allowed her alimony at the rate of $125 a month, but said nothing about a partition of the community property. Three months later the plaintiff took an appeal, complaining of the court's failure to order the partition of the community property. The defendant, appellee, then contended that the plaintiff had tacitly renounced the community by failing to accept it formally within 30 days after the decree of separation was rendered. But this court ruled otherwise, and amended the judgment by ordering a partition of the community property. See White v. White, 153 La. 313, 95 So. 791.

At the end of two years after the Civil District Court had rendered its decree of separation, the defendant filed a petition for an absolute divorce. Mrs. White pleaded that her husband's petition for divorce was premature. The plea was overruled; and, answering the husband's demand, she filed a reconventional demand for a divorce in her favor, for the permanent care and custody of her children, for alimony, and for an inventory and a sale of the community property to effect a partition. The community property was inventoried and sold under orders of court, and the proceeds were deposited into the registry of the court. There was judgment in favor of Mrs. White, granting her an absolute divorce, giving her the care and custody of her minor children, and ordering her husband to pay her $80 a month alimony for the support and education of the children. At the same time, the court ordered a distribution of the proceeds of the sales of the community property. It is from that part of the final judgment distributing the proceeds of the sales of the community property that the husband has taken this appeal.

Appellant contends yet that Mrs. White tacitly renounced the community by failing to accept it formally within the 30 days after the Civil District Court rendered the

decree of separation from bed and board. Our ruling to the contrary, amending the original judgment of the Civil District Court by ordering a partition of the community property, has finally settled the proposition that Mrs. White did not renounce the community.

Appellant does not complain of the judgment of divorce, of the awarding of the care and custody of the children to Mrs. White, or of the judgment for alimony. His complaints relate to certain charges against him, and the credits in favor of his wife, in the court's method of settlement of the community estate. We will dispose of the complaints in the order in which they are argued in appellant's brief.

The proceeds of the sales of the community property, deposited into the registry of the court, amounted to $14,706.23, of which each party was allowed to withdraw $2,000 during the litigation, leaving a balance of $10,706.23. To that was added $6,558.75, said to have been retained in cash by White, and $4,597.12 for assets said to have been kept by him and not accounted for, and $66.50 for rents collected by Mrs. White, and $453.99 for sales of property which she is said to have retained the proceeds of. The total of community assets was, therefore, $26,382.59. There seems to be an error of 3 cents in the addition, for the total of community assets stated in the judgment is $26,382.62. From this is deducted $3,635.95, for notarial fees, appraisers' fees, Mrs. White's attorney's fee, and other costs, leaving $22,746.67 as the net value of the community estate. The judgment declares White to be entitled to one-half of that sum, the half being $11,373.33, plus $1,080.43 for community debts paid by him, making a total of $12,453.76 due him; against which he is charged with the $6,558.75 for the cash said to have been retained by him, and the $4,597.12 for assets said to be not accounted for by him, and the $2,000

withdrawn from the registry of the court, thus leaving him indebted to the community in the sum of $702.11. The court gave Mrs. White judgment against her husband for the $702.11, with legal interest from the date of the judgment. The court ordered that Mrs. White should be paid out of the fund in the registry of the court $9,630.06 as her share of the community estate; being her $11,373.33 plus $777.22 for community debts paid by her, and less the $66.50 for rents collected and the $453.99 proceeds of sales retained by her, and the $2,000 withdrawn from the registry of the court.

[1] The first item complained of by appellant is a charge of $532.98 against him for commissions supposed to have been earned by him as a sales agent before the divorce, and supposed to have been collected by him after the divorce. The amount is made up of five items, representing commissions said to have been paid by five different manufacturing concerns. The record shows that one of these items, $118.90, was paid before the divorce suit was filed, and should not have been charged against White in the settlement of the community. The attorneys for appellee concede that the judgment is wrong in that respect. The record shows that another of the five items, $127.39, for commissions collected by White after the divorce, was for commissions earned after the divorce. The three other sums, aggregating $286.69, were collected very soon after the divorce suit was filed, and, without any showing on the part of appellant to the contrary, we assume that these commissions were earned before the suit was filed. Appellant was better able than Mrs. White was to show when his commissions were earned. Our conclusion is that the account must be corrected by charging appellant $286.69 instead of $532.98 for the commissions collected and retained by him.

[2] The next item complained of is a charge

of $832.32 against White for chattels, mainly farming implements, cows, a mule, and two mares, said to have been in his possession when the divorce suit was filed, and not accounted for. Our opinion is that the articles referred to, which were left on the farm when Mr. and Mrs. White quarreled and she went away, were accounted for by him. He sold whatever he could sell at the best price he could get, and accounted for the proceeds in the list turned over to the notary. The mule, for which appellant is charged $90, strayed away and was lost. The hogs did likewise, and the two mares died. But White was not at fault in that respect. He did all that he could do to save the belongings on the farm after his wife left, but his business in New Orleans compelled him to neglect the farm, which was in St. Tammany parish. Our opinion is that this item of $832.32 is not a just charge against him.

[3] Appellant's next complaint is that he is charged $1,050 for Liberty bonds said to have been in his possession when the divorce suit was filed, and not accounted for. The bonds were not in appellant's possession when the suit was filed. They were pledged to a bank for a community debt of $900. The bonds were afterwards sold by the bank for $915.10, and appellant received only the surplus of $15.10. He ought to be charged with only $15.10 instead of $1,050.

[4] Appellant's next complaint is that a charge of $450 for a Dodge automobile which he had in his possession when the divorce suit was filed is more than the car was worth. He sold it for $200 two years after the divorce suit was filed. It cost $963 new. Considering that he had the use of the car for two years after the divorce suit was filed, our opinion is that the charge of $450 was not too much.

[5] Appellant's next complaint is that he is charged $400 for a Ford automobile, said to have been in his possession when the divorce suit was filed, and not accounted for. The car was bought secondhand a year before the suit was filed, and was sold before the suit was filed. In one place in the transcript it appears that the price received was $100, and in another place the figure is $400; but, inasmuch as the car was sold before the divorce suit was filed, it matters not what the price was. That item should be stricken from the account.

Appellant's next complaint is that he is charged $800 for jewelry that was in his possession when the divorce suit was filed. There is grave doubt about the justness of that charge. It is doubtful that the jewelry was worth near as much as $800. Appellant testified, and was not contradicted in the statement, that the jewelry was not his, but was pawned to him for a loan, which was all paid except $50 when the divorce suit was filed. We have concluded, with some doubt about the matter, that the proof does not warrant the court's charging appellant more than the $50.

[6] Appellant's next complaint is that he is charged with all of the rents that he collected after the divorce suit was filed, $3,931, when, as a matter of fact, he paid $3,680 of the amount to his wife as alimony during the pendency of the suit. The situation is the same as if Mrs. White had collected the rents to the amount of $3,680 and had retained it for her support. Under those circumstances, the husband would not be liable for the $3,680 in the final settlement of the community estate on the theory that he owed the alimony out of his separate estate. The ruling in Hill v. Hill, 115 La. 490 (see page 497), 39 So. 503, seems to be decisive of that point. Our conclusion is that this charge of $3,931 for rents collected by appellant should be reduced to $251.

[7] Appellant's next complaint is that he is charged $1,064.80 rent for the matrimonial

domicile, which he alone occupied for a period of 19 months and 12 days, after the divorce suit was filed. The house was rented for $50 a month when the suit was filed, and was afterwards rented for $55 a month for a year before appellant occupied it. It is quite likely that he could have continued to collect rent for the house if he had not seen fit to occupy it himself; for which reason, we agree that he is chargeable with the rent.

Appellant's next complaint is that he is charged $199.25, because, under authority of the court, he mortgaged the community property for $2,700 to pay debts that were listed at $2,500.75. At the end of the list he showed that there were perhaps other debts to be paid; hence his asking for authority to borrow more than the $2,500.75. As a matter of fact, he paid debts amounting to $141.33 more than he borrowed. This charge of $199.25 therefore should be converted into a credit of $141.33.

Appellant's next complaint is that out of the community funds which he is charged with he paid community debts amounting to $480.86, for which he claims credit. There is some evidence of the payments, but it is not satisfactory. We are not convinced that the judge of the district court was wrong in refusing to allow credit for the alleged payments.

[8] Appellant's next complaint is that the court refused to allow him credit for $1,200 for a payment made with his separate funds for the benefit of the community. There was a debt of $1,200 owed to him before he was married, which he collected after he was married, and with which he made the first payment on property bought by the community from the Metropolitan Building Company. The only argument against allowing this credit seems to be that appellant did not prove that the community estate was enhanced to the extent of the $1,200. The answer is that the property on which this $1,-200 was paid to the Metropolitan Building Company belonged to the community until it was settled in these proceedings. It was sold in these proceedings for more than $1,200. The community estate was therefore $1,200 better off than it would have been if the payment had not been made, regardless of any enhancement or depreciation in the value of the property after the payment was made. Appellant is entitled to have credit for the $1,200.

[9] Appellant complains of the compensation allowed the notary and appraisers for making the inventory. The notary was allowed $300 and the two appraisers $100 each. The attorneys for appellant say in their brief that they do not insist upon enforcing the fee bill, and consent that the notary be allowed $100 and that the appraisers be allowed $50 each; which allowances exceed the fee bill, which, according to Act 101 of 1870, p. 161, is yet in force. See Succession of Morgan, 124 La. 755, 50 So. 703; Succession of Alexander, 130 La. 7, 57 So. 534. It is not against public policy for the parties concerned in the matter to agree to pay the notary and appraisers more than the compensation allowed by the fee bill. We will therefore reduce the notary's fee to $100 for making the inventory and allow the two appraisers $50 each.

[10] Appellant complains of the court's charging the community estate $1,000 for Mrs. White's attorneys' fees. The charge is made for "fees for obtaining the dissolution and settlement of the community, as attorneys for Mrs. A. C. White, $1,000." The attorneys for appellant concede that the fee is reasonable, but contend that the community estate is liable only for the service rendered in obtaining the dissolution of the community, and not for the services rendered to Mrs. White in the subsequent litigation over the settlement of accounts. They cite

the case of Brock v. Automobile Livery & Sales Co., 137 La. 9, 68 So. 195, which seems to sustain their contention. They contended that $100 would be a sufficient fee for Mrs. White's attorneys to charge the community estate for dissolving it, but we do not think so. We have concluded to divide the charge equally, charging the community estate $500 for the service rendered by Mrs. White's attorneys in dissolving the community, and leaving it to her to settle for the services rendered by her attorneys in the subsequent litigation.

The judgment appealed from is amended as follows: The gross value of the community estate is reduced from $26,382.62 to $19,239.86, by reducing the charges against appellant $7,142.76, being $246.29 on the commissions collected by him, $832.32 for the live stock and implements, etc., charged to him, $1,034.90 for the Liberty bonds, $400 for the Ford car, $750 difference on the value of jewelry charged to him, $3,680 difference on rents collected and charged to him, and $199.25 for the supposed excess of money borrowed over debts paid; thus making the charges against appellant $6,013.11 instead of $13,155.87 as stated in the judgment appealed from. The amount of charges against the community estate, fixed in the judgment appealed from at $3,635.95, is increased to $4,177.28, by adding the $1,200 due to appellant's separate estate, and the $141.33 due him for debts paid over and above the amount borrowed on the mortgage, and by deducting $500 of the attorneys' fee, $200 of the notary's fee, and $100 of the appraisers' fees. It is ordered that the case be remanded to the Civil District Court for a distribution of the fund in the registry of the court, according to this amended judgment and decree. The costs of this appeal are to be paid by the community estate.