58 So.2d 385 (1952)
220 La. 1061
UCHELLO
v.
UCHELLO (three cases).
Nos. 40063, 40260.
Supreme Court of Louisiana.
March 24, 1952.
James G. Schillin, New Orleans, for Anthony Uchcllo, defendant-appellant.
Warren M. Simon, New Orleans, in pro. per.
Guy J. D'Antonio, New Orleans, for Mrs. Lucille Grandeury Uchello, defendant in rule and appellant in case No. 40063, and plaintiff-appellant in case No. 40260.
FOURNET, Chief Justice.
These consolidated appeals involve questions of alimony and distribution of the community assets.
Case No. 40,063 on the docket of this Court is an appeal from a judgment on a rule to suspend payment of any alimony, filed by the husband, Anthony Uchello, in the cases (consolidated below) of Mrs. Lucille Grandeury Uchello against her husband for separation on grounds of abandonment, filed January 20, 1948, and Anthony Uchello against his wife for separation on grounds of cruelty, filed February 3, 1948, resulting in a judgment, rendered March *386 30, 1949, in favor of the wife for separation from bed and board and an alimony award of $175 per month. It appears that in answer to the above rule to suspend payment of any alimony, the wife prayed that the award be increased to $300 per month. The district court dismissed the rule as to the husband, and denied the increase sought by the wife; and as she did not appeal nor answer the husband's appeal, the sole question is whether the alimony of $175 per month was properly continued.
Case No. 40,260 on the docket of this Court concerns a suit instituted by the wife on May 17, 1949, for partition of the community and for an accounting by the husband, during the course of which the parties agreed on payment of many items in the Notary's proces verbal, the actual trial having thus been limited to certain items remaining in dispute. The appeals in this case are from the district court's judgment on a rule decreeing distribution of the remaining amounts, and are prosecuted by the husband, by the wife, and by Mr. Warren Simon, attorney, no longer of counsel, who seeks to have increased the amount of attorney's fees awarded him in the partition proceedings for services performed as attorney for the wife in the separation suits mentioned above. Counsel of record likewise maintain that the fees granted them are inadequate, and seek to have them increased. The matters to be determined are these: (1) whether the husband should be allowed credit for alleged repairs made to community property following the separation; (2) whether he should be allowed credit for the alimony paid his wife in his accounting of the rents collected by him; and (3) the fees to be allowed counsel for the husband and wife, respectively, on account of services performed from the inception of this litigation.
In disposing of the appeal in case No. 40,063, the record discloses that alimony pendente lite was awarded the wife on February 9, 1948, at the rate of $166 per month, which amount was later (December 1, 1948) increased to $210 per month, based on an agreement between the parties. Some four months thereafter, at the time of judgment of separation from bed and board (March 30, 1949), alimony wasagain by consent reduced to $175 per month until final divorce.
The husband, at the time he filed the rule to suspend alimony payments (January 23, 1950), in an effort to support his claimed inability to pay because of decreased income, offered a profit and loss statement covering the last three months of 1949 (prepared from figures submitted by him to a bookkeeper) which showed a net loss in his business for the period of $255.54, arrived at by deducting the (admitted) profit realized from gambling conducted on the premises, $1,003.50, from the (alleged) loss suffered in his retail saloon business, $1,259.04. He contends that this establishes positively that from the time the rent collections stopped, upon the sale of the community real estate (September, 1949) in the partition proceedings, he had no income upon which alimony could be assessed.
To rebut this evidence, and to prove the amount of purchases made by the husband for his business operations at the time of filing the rule to suspend payment of alimony were consistent with purchases made at earlier periods, the wife offered ledger sheets of companies doing business with the husband covering the 12 months of 1949 or a longer period. She also sought to elicit, through testimony of his colored employees, that business was as usual.
The husband's contention that the stoppage of rent collections has deprived him of income on which alimony can be assessed is weakened by the fact that he has consistently urged his inability to pay, even while he was collecting the rents. The district judge obviously believed that the husband was able to continue alimony payments in amount of $175 per month, and after a full consideration we do not feel justified in disturbing his finding in this respect. Moreover, it is apt to observe here that when the alimony was reduced by judgment of March 30, 1949 (judgment in the separation suits), it was done by consent between the parties, Mr. Uchello's attorney having made this statement at the commencement of the trial on March 22: "* * we have agreed that until the final divorce decree is rendered, Mr. Uchello will pay to *387 his wife the sum of $175.00 monthly." (Emphasis ours.)
The appeal in case No. 40,260 presents the question, first, of whether the husband should be allowed credit of $1,521.90, the cost of alleged repairs made to the community property after the separationit being the claim of the wife that he has failed to sustain the burden of proving the repairs.
Mr. Uchello testified that during the latter part of 1948 he had work done on one of the apartments in a building owned by the community and containing four units, located on Second Street in New Orleans, with the intention of occupying it himself, and in proof thereof submitted receipted bills for lumber, hardware, electrical equipment, paint and other materials, totaling $421.90, and for labor in amount of $1,100. He stated that a portion of the above cost was incurred in extending the garage, replacing a door thereon and putting a new roof on half of the structure. The contractor who did the work testified that he, with his helpers, repaired the roof of the house, completely redecorated the interior of the one apartment including plastering, painting, sanding of floors, removal of a partition and a dumb waiter, and replacement of screens; that on the four-garage building he put a new roof and lengthened one of the garages to the rear sufficiently to house Mr. Uchello's car.
Although Mrs. Uchello states that she later inspected the property and "there was no change in the garage," it is possible that the work done was of the type which would not have been observed on casual inspection. She admits that she did not see the interior of the apartment. The district court was of the opinion that the husband had sufficiently proved the above items, and we are in accord.
The second question presented is whether the husband is entitled to a credit, against net rentals collected before sale of the community property ($6,826.03), for alimony paid during the same period ($3,574), on the basis of his claim that the rentals were the main source of the alimony payments. He points to the records in the separation suits to show that from the beginning, the court consistently included the rents in determining his ability to pay, and that his income from all other sources could not possibly have supported the payments since it amounted to little more than half of the yearly alimony total. He further calls attention to the fact that the wife (in June, 1949, shortly after the partition suit was filed) sought to compel the husband to pay over to her one-half of the net rentals, but abandoned the attempt upon the showing that she had made her alimony claim on the basis of including the rentals in his monthly income. Mr. Uchello's counsel contends that this constituted an election to receive her alimony from the rentals and consequently she is not entitled to have paid to her, a second time, half of these net rentals relying on the cases of White v. White, 159 La. 1065, 106 So. 567, and Hill v. Hill, 115 La. 489, 39 So. 503, as setting forth the well-settled rule on this point.
The attorney for Mrs. Uchello does not deny that the alimony payments were based on income including rents, maintaining only that they are not debts for which the community is responsible but are debts for which the husband alone is responsible, having been incurred by him subsequent to the filing of the suit for separation. He cites the case of Talbert v. Talbert, 199 La. 882, 7 So.2d 173, as controlling.
While the Talbert case correctly states the law to be applied in similar factual situations, since as a general rule it may be said that alimony pendente lite is a debt for which the husband is responsible, it is noted that counsel for the wife makes no attempt to distinguish the facts here from those in the White case, supra. Indeed he could not, since the similarity is at once apparent. In the White case it was the husband's complaint that he was charged with all of the rents that he had collected after the divorce suit was filed, $3,931, when, as a matter of fact he had paid $3,680 of the amount to his wife as alimony during the pendency of the suit. "The situation," said the Court, "is the same as if Mrs. White had collected the rents to the amount of $3,680 and had retained it for her support. Under those circumstances, the husband would not be liable for the $3,680 in the final settlement of the *388 community estate on the theory that he owed the alimony out of his separate estate. The ruling in Hill v. Hill * * * seems to be decisive of that point." 159 La. at page 1072, 406 So. at page 569.
In the instant case the husband collected net rentals from the time of separation until the sale of the property to effect a partition, in amount of $6,826.03, and made alimony payments during the same period totaling $3,574. Additionally, the wife retained the use of the community home. Under the facts here, the ruling in the cases of White v. White, supra, and Hill v. Hill, supra, are controlling, and the district court was in error in refusing the husband credit against the rentals collected for the alimony payments made during the period.
Lastly, we have for consideration the fixing of the fees of attorneys employed by both the husband and the wife for the prosecution and defense of the suits for separation from bed and board and for their services in the partition proceedings, which are properly chargeable as a community debt. See Talbert v. Talbert, 199 La. 882, 7 So.2d 173, and cases therein cited. In the proces verbal, these fees were set down in the amounts of $6,000 for Mr. Schillin, attorney for the husband, and $6,000 for Mr. D'Antonio, the present attorney for the wife, for services performed in these proceedings as well as in pending income tax suits with which we are not here concerned; and $2,000 for Mr. Simon (previously retained as counsel for the wife) for services performed on Mrs. Uchello's behalf in the separation suits. During the trial on the rule ordering the Notary to draft a partition, from which the appeal here (No. 40,260) was taken, Mr. Schillin testified that by agreement with his client he was to receive $6,000, and that Mr. D'Antonio and Mr. Simon together were to receive $6,000, the understanding being that they would come to an agreement as to the share of that amount to which each was entitled; and Mr. Uchello verified this statement, saying that the fees had been so agreed upon. However, it appears that due to some confusion, the parties eventually submitted for final adjudication in the partition suit their claims for attorney's fees, whereupon the judge allowed an amount of $3,500 to the attorneys for each spouse, excluding fees in the tax suitsthe sum for Mrs. Uchello's attorneys being prorated $750 to Mr. Simon and $2,750 to Mr D'Antonio.
It is the position of present counsel for the wife, Mr. D'Antonio, that in view of the fact that this is a contested partition matter, the lower court was without authority to set the fees of counsel, citing Duffourc v. Duffourc, 154 La. 174, 97 So. 391, and Act No. 69 of 1918, LSA-R.S. 13:4524. This statute provides that in judicial partitions among co-owners or co-heirs, where there is no contest by the defendant or the other co-owners, the fee of the attorney bringing the suit for the plaintiff shall be fixed by the court as costs, to be paid out of the mass. There is contained also the specific proviso that "No part of the fee so allowed shall be paid out of the part adjudged to belong to absentees, or to minors * *." In the Duffourc case the statute was clearly controlling, since there was a dispute as to the deduction to be made from the share of minors; the holding is not apposite here, however, neither minors nor absentees being involved, and, as pointed out by the Court in a recent case, "There is nothing in the statute to prohibit the allowing of an attorney's fee by consent of all of the parties to the suit." See Couret v. Couret, 206 La. 85, at page 99, 18 So.2d 661, 666.
If his position in the above matter is not sustained, Mr D'Antonio joins the other attorneys in urging that the fees set by the lower court are inadequate compensation for the services performed, and that these should be increased to $5,000 for the attorney for the husband and $5,000 to be divided between the attorneys for the wife. They point to voluminous records (made part of these appeals) in four separate suits, bristling with motions, exceptions, restraining orders, rules, returns thereto, and subpoenas duces tecum, extending over a period of some four and a half years and involving lengthy trialsevidence of the fact that the opposing claims have been unremittingly contested as well as that the litigation has been of an extremely bitter and antagonistic nature, necessitating conferences *389 without number and the employment of extreme patience and tact. Mr. Simon, no longer of counsel, who represented Mrs. Uchello during the first six months of litigation in three separate suits, having been first engaged to defend her in a previous separation suit filed in Sptember, 1947, by Mr. Uchello (later dismissed upon reconciliation of the parties), and then retained by her to file the separation suit on her behalf and defend her in the suit filed by her husband, prepared the necessary pleadings and conservatory writs and appeared in court for a total of twelve rules filed by or against Mrs. Uchello. He seeks to have his fee increased to $2,000.
Counsel also call attention to the value of the gross estate of the Uchellos, inventoried at $143,112.83; to the fact that cash from assets of the community, after sale, amounted to $105,529.22, of which there remained some $26,500 for partition after payment of mortgages, federal taxes and penalties, and all other expenses; and cite the case of Parker, Seale & Kelton v. Messina, 214 La. 203, 36 So.2d 724 (a suit attended with many difficulties), wherein an award of $1,250 \vas allowed the attorneys for their services to the wife in an unsuccessful suit for separation extending over a period of about seven months, where a gross estate of some $25,000 was involvedthe Court having taken into consideration, in determining the fee, the difficulties of the case, the amount in controversy, and other attending circumstances, as well as the physical and mental labor and the responsibility incurred in connection therewith.
A distinguished member of the Bar who has been in practice for more than fifty years, Mr. George Montgomery, testified that he had examined the records and in his opinioneliminating the tax casesa fee of $5,000 to each side would be fair and reasonable; that such is the amount he would have charged, taking into consideration the services rendered, the character, background, ability and standing of the attorneys, and means of the client to pay.
Under the circumstances of the case, we think a fee of $5,000 for the attorney representing the husband, and $5,000 for the attorneys who have represented the wife, is fair and just. In allocating the amount to be paid to each of Mrs. Uchello's attorneys, it is our opinion that Mr. Simon is entitled to a fee of $1,250 for his services in safeguarding the interests of the wife in the early stages of the litigation, and Mr. D'Antonio, to a fee of $3,750 for his services in her behalf during the remainder of this litigation.
For the foregoing reasons, it is ordered, adjudged and decreed that the judgment of the lower court be amended so as to allow Mr. Uchello a credit, against net rentals collected, of $3,574, representing alimony paid during the period of receipt of such rentals; that it be further amended so as to allow James G. Schillin, as fee for services rendered Mr. Uchello, the sum of $5,000, and Guy D'Antonio and Warren M. Simon, for services rendered Mrs. Uchello, the sum of $5,000, in the proportion of $3,750 to Mr. D'Antonio and $1,250 to Mr. Simon; and, as thus amended, that the judgment be affirmed.