103 So.2d 263 (1958)
235 La. 226
Lytton Paul JOHNSON
v.
Ollie Josephine CHAMPAGNE, Wife of Lytton Paul JOHNSON.
Ollie Josephine CHAMPAGNE, Wife of Lytton Paul JOHNSON.
v.
Lytton Paul JOHNSON.
No. 42924.
Supreme Court of Louisiana.
January 6, 1958.
On Rehearing May 26, 1958.
Dissenting Opinion June 23, 1958.
*264 Lewis R. Graham, New Orleans, for Malcolm L. de la Houssaye, appellant.
Grady C. Durham, New Orleans, in pro. per.
John J. Williams, Cobb & Wright, Herman M. Baginsky, New Orleans, for Industrial Electric, Inc., and Industrial Outdoor Displays, claimants and appellants.
Rittenberg, Weinstein & Bronfin, Fred Bronfin, New Orleans, for opponent-appellee.
HAMITER, Justice.
The appeals in these consolidated cases are being prosecuted by alleged creditors of the community of acquets and gains which, at one time, existed between Lytton Paul Johnson and Ollie Josephine Champagne, his wife. They were taken from a judgment of the district court regulating the order of distribution of funds realized from a judicial partition sale of the community property.
The above named persons were married in 1947. On July 15, 1952 a judgment of separation from bed and board in favor of the husband was signed, it reserving to both of the parties the right to a partition of the property belonging to the community that formerly existed. On August 1, 1952, Mrs. Johnson petitioned the court for a judicial partition of the community assets; however, it was not until April 13, 1954, almost two years after the judgment of separation (which dissolved the community) that a judicial sale of such property was held in order to effect the partition. The property thus sold consisted primarily of a going business known as Johnson's Crescent City Tours. The proceeds of the sale (amounting to $15,737.74) were and are held by a notary public, appointed to effect the partition, pending a settlement of the various alleged debts. In October, 1954 Mr. Johnson obtained a divorce.
Following the judicial sale, and after numerous claims were filed, the matter was referred to the Commissioner of the Civil District Court of Orleans Parish who, later, submitted written recommendations for distribution of the funds. To these recommendations certain creditors tendered oppositions; however, after a hearing, they were largely adopted by the district court.
Among those appealing from the distribution judgment are Malcolm L. de la Houssaye and Grady C. Durham, attorneys at law who represented Mr. Johnson and Mrs. Johnson, respectively, in the separation and the subsequent proceedings. For services thus rendered the former attorney was awarded a total fee of $3,475 and the latter one of $2,961.14. However, the distribution judgment provided for a division *265 of these fees. It decreed that for the services rendered to their respective clients prior to the dissolution of the community (by the judgment of separation) there would be paid out of the corpus of the community the sum of $975 to Mr. de la Houssaye and $500 to Mr. Durham; and that each attorney would receive the balance of his awarded fee (for services performed after the separation judgment) from the net share to which his client was entitled (that due to the client after payment of all community debts).
Complaining of such division these attorneys, on their appeals, contend that the fees for legal services rendered in the partition proceedings (all those which took place after the judgment of separation which dissolved the community) are also properly chargeable as a community indebtednessto be paid out of the corpus of the community. And in support of the contention they cite and rely mainly on Talbert v. Talbert, 199 La. 882, 7 So.2d 173; Demoruelle v. Allen, 218 La. 603, 50 So.2d 208; Uchello v. Uchello, 220 La. 1061, 58 So.2d 385 and Glorioso v. Glorioso, 223 La. 357, 358, 65 So.2d 794. We do not find that these decisions are authority for such a proposition. Only in the Uchello case is there any language which might tend to support it. However, there the fees of the attorneys for services rendered in the partition proceedings were ordered paid out of the corpus of the community solely because the parties had so agreed. Moreover, the holding in the cited Talbert case is clearly contrary to the contention of these appellants.
But conceding for the sake of argument that attorneys fees of the respective parties for legal services rendered in a contested partition of the community property are ordinarily chargeable against the community as costs of the liquidation, we do not believe that the legal services presently under consideration were so performed. It appears that instead of liquidating the community within a reasonable time after the judgment of separation the parties continued to operate their tourist business, which was the chief community asset, as a going concern (apparently its liquidation at that time would not have been advantageous to either of them). Hence, theirs was a relationship of co-owners and joint operators of a business venture, for the success of which most of the legal services in question were rendered, and on the ultimate liquidation of that business the parties were in the same position as any other co-owners. In this connection it is to be noted that the Commissioner of the Orleans Parish Civil District Court found that "the actions of the husband as administrator of the affairs of the community pending an actual division were not of an administrative nature, but went far beyond that."
We do not mean to say that the act of the parties in continuing the business was not beneficial to them and to their creditors. In fact, it appears that it was. But in pursuing this course they were operating a joint venture as co-owners, and on its liquidation the attorneys fees incurred in the operation were chargeable as in an ordinary partition.
The remaining two appeals were taken by Industrial Outdoor Displays and Industrial Electric, Inc., affiliated companies. The claim of the former against the community was denied in its entirety, while that of the latter was recognized to the extent of $401.04. We find no error in the rulings. The contract for services rendered by Industrial Outdoor Displays was entered into with Mr. Johnson after the dissolution of the community. It could not have been, therefore, a community obligation. The services performed by Industrial Electric, Inc. for the community (prior to its dissolution) do not appear to have had a value exceeding the amount allowed by the district court.
In a document filed here, and referred to as an answer to the appeals taken by the aforementioned appellants, James Thomas Conner requests that his awarded attorneys fees of $1,000 be recognized as a charge against the corpus of the community. *266 Since Mr. Conner did not appeal, we doubt that his request is properly before us for consideration. However, there is no merit to it. His claim is for legal services rendered in certain proceedings after the judgment of separation. For them, as before shown, the community was not and is not responsible.
For the reasons assigned the judgment appealed from is affirmed.

On Rehearing
TATE, Justice ad hoc.
The facts are fully stated in our original opinion. Rehearing was granted upon the application of certain creditors,[1] insofar as this Court affirmed the trial court's disallowance of payment of their claims from the proceeds of the judicial sale of the community assets. These creditors' claims are for services rendered to the community business between the date (July 15, 1952) the community was dissolved by the judgment of separation from bed and board,[2] and the date (April 13, 1954) of the judicial sale of the property formerly belonging to the community.
The classification of these debts as separate or as entitled to be paid from community proceeds is of more than academic interest to these creditors, for according to their allegations certain other creditors of Mr. and/or Mrs. Johnson individually will be paid in preference to them if we do not recognize the present creditors' claims as payable directly from the proceeds of the community rather than by the Johnsons individually.
Upon thorough reconsideration of the issues raised by this appeal, we are unable to see that we were in error in our original determination that the debts in question were as a result of the continued operation after the community's dissolution of the chief community asset, a tourist business, as a going concern, so that the liabilities thus incurred were not community debts payable as such directly from the proceeds of the community property.
In Uchello v. Uchello, 220 La. 1061, 58 So.2d 385, we held that attorneys' fees in contested partition proceedings may be fixed and payable from the mass by consent of the parties. Since the present claims for attorneys' fees (see footnote 1 above) were with the consent of Mr. and Mrs. Johnson fixed by the court, the Uchello case is cited in support of the contention that the attorneys' fees herein should be denoted as community rather than separate debts. The Uchello case, concerning partition of a solvent community, is not in point. It did not hold that the parties may by their own consent confer community status upon certain separate debts to the prejudice of others.
As we recognized in our original opinion, the services of the creditors before us were rendered to the going business formerly owned to the community, although not to the community itself. The record shows that the services so performed by these creditors (see footnote 1 above) *267 clearly benefited this community business and were largely responsible for its value when sold at partition sale: The advertising services of Industrial Electrical and Industrial Outdoor Display are reflected to be indispensable to a tourist sight-seeing service such as the present: The attorneys' fees preserved the value of the community business by settling and forestalling claims against it.
Our careful consideration of these circumstances and of the entire record has led us to the conclusion that the operation of the community business by the husband with the consent of the other co-owner of the assets, his wife, was in the nature of a partnership operation, LSA-C.C. Arts. 2801, 2805, 2806, 2809, 2811, 2813; although no longer a community enterprise, LSA-C.C. Art. 2807. Considering that these co-owned assets were operated as a business entity, essential requirements for a partnership relationship of consent or intention, LSA-C.C. Art. 2805, Labat v. Labat, 232 La. 627, 95 So.2d 129; Glover v. Mayer, 209 La. 599, 25 So.2d 242, to make and to share profits from the use of the partners' assets combined for the purpose, LSA-C.C. Arts. 2801, 2811, are shown by the record and pleadings herein to have been met by the mutual agreement of the former spouses that the husband should continue for their mutual profit to operate the community's tourist business after the judicial dissolution of the community and until its partition or sale could be satisfactorily arranged.
Business relationships with similar characteristics have been held to have the status of partnerships with the legal incidents thereof, although not characterized as such by the participants and often resulting from informal or oral agreement. Ingersoll Corp. v. Rogers, 217 La. 79, 46 So.2d 45; Posey v. Fargo, 187 La. 122, 174 So. 175; J. P. Barnett Co. v. Ludeau, 171 La. 21, 129 So. 655; Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228; Ludeau v. Avoyelles Cotton Co., 164 La. 275, 113 So. 846; Graham Paper Co. v. Lewis, 159 La. 151, 105 So. 258; Cameron v. Orleans and Jefferson Ry. Co., 108 La. 83, 32 So. 208;[3] Cf., Blanchard v. Haber, 163 La. 627, 634, 112 So. 509.
Under the civil law, as consistently noted and applied by the jurisprudence of Louisiana, a partnership is a legal entity, separate and distinct from the persons who compose it, with its own rights, obligations, and causes of action. Trappey v. Lumbermen's Mutual Cas. Co., 229 La. 632, 86 So.2d 515, and cases cited therein. Consistent therewith, "The partnership property is liable to the creditors of the partnership, in preference to those of the individual partner * * *," LSA-C.C. Art. 2823. The assets of a partnership are to *268 be applied to payment of the partnership debts before disbursement to the partners or to their individual creditors. Posner v. Little Pine Lbr. Co., 157 La. 73, 102 So. 16; Toelke v. Toelke, 153 La. 697, 96 So. 536; Guess & Albin v. Ham, La.App. 2 Cir., 183 So. 61, writ of certiorari denied.
We therefore conclude that although the creditors' claims now before us are not obligations of the community formerly existing between the Johnsons, they are, nevertheless, partnership obligations of the going business of "Johnson's Crescent City Tours" during the period it was operated as a partnership, and thus are entitled to be paid from the proceeds of the partition sale before said proceeds are distributed to the co-owners.
The attorneys' fees sought were fixed by the court, and the record reflects them to be reasonable in relation to the services performed.
The evidence is somewhat confusing as to the exact amount due upon the claims of the other two creditors, the affiliated firms of Industrial Electric, Inc., and Industrial Outdoor Displays, a partnership.
Without detailed discussion, we shall simply say that the record does not evidence error in the District Court's award to Industrial Electric, Inc., of $401.04.[4] Insofar as this firm seeks recognition of its claim upon Mr. Johnson's promissory note dated December 17, 1953 (after dissolution of the community) in the amount of $737.50 (which included the then past due debt due by the community and/or partnership to both creditor firms, the affiliated corporation and partnership), the somewhat ambiguous evidence indicates that such note was in the nature of collateral security furnished by Mr. Johnson individually for partnership debts. It was not, as claimed, a novation extinguishing the former partnership liabilities and creating a new one, for such novation is never presumed and must be clearly intended, LSA-C.C. Art. 2190, as is not the case here.
The indebtedness to the remaining creditor, Industrial Outdoor Displays, resulted from execution after dissolution of the community of a contract by Mr. Johnson to lease a large outdoor display sign needed by the community tourist business. The proof shows that the latter business was furnished the use of said sign between October 18, 1953, and April 13, 1954 (the date of the partition sale). The monthly rental of $80 thus due by the community business is $466.67, in which amount the claim of Industrial Outdoor Displays is recognized.
For the reasons assigned, the judgment of the trial court is amended so as to decree the payment as ordinary claims against the proceeds of the property sold herein at partition sale (that is, against the corpus before distribution to Mr. and Mrs. Johnson) the following claims:

Grady C. Durham, Attorney ........... $2461.14
Malcolm L. de la Houssaye, Attorney
..................................... 2500.00
Industrial Outdoor Displays, a
partnership ......................... 466.67

Any additional claims of Industrial Electric, Inc. or Industrial Outdoor Displays are dismissed without prejudice, insofar as against Lytton Paul Johnson individually.
As amended, the judgment appealed from is affirmed. All costs to be taxed to the mass, see Kelly v. Giles, 167 La. 287, 119 So. 51; Soules v. Soules, 104 La. 796, 29 So. 342.
Amended and affirmed.
*269 HAMITER, J., concurs with written reasons.
SIMON, J., dissents with written reasons to be filed.
McCALEB, J., dissents being in agreement with the views expressed in the original opinion.
HAMITER, Justice (concurring).
On the original hearing of this cause the sole argument advanced on behalf of the instant creditors was that they are entitled to preferential payment out of the funds derived from the sale of the property of Johnson's Crescent City Tours because the adjudication was made to settle the community existing between Mr. and Mrs. Johnson and the claims asserted are wholly obligations of the community. There was no suggestion that the sale involved a settlement of a partnership operation.
Nevertheless, inasmuch as it appears that the actions of Mr. and Mrs. Johnson (those following the judgment of separation) constituted at least the conducting of a joint business venture it does seem equitable and proper that the creditors whose services benefitted the undertaking are entitled to be paid by preference out of the proceeds of the sale of the assets of the business. This is particularly true since neither of the co-owners objects to the preferential payment.
SIMON, Justice (dissenting).
I am of the opinion that the liabilities and debts incurred by the parties herein subsequent to the rendition of the judgment of separation from bed and board were not community debts payable as such directly from the proceeds of the community property, but were debts incurred individually by the respective parties under authority, orders and sanction of the trial court during the process of the judicial liquidation of the community assets.
It is to be observed that all negotiations leading to the sale, disposition or settlement of claims against the community assets were accomplished under judicial sanction as evidenced by the numerous judicial decrees following and subsequent to the judgment of separation from bed and board, thus effecting a judicial liquidation of the community assets.
I am also of the opinion that the parties herein at no time became members of a partnership, and no partnership was formed by them. The action on the part of the husband enjoining his wife from interfering with his operation of the business or from entering upon the business premises is inconsistent with the relationship of business partners operating the business as a going concern for their mutual benefit and profit.
I respectfully dissent.
NOTES
[1] These creditors are: (a) Malcolm L. de la Houssaye and Grady C. Durham, attorneys at law who represented Mr. Johnson and Mrs. Johnson, respectively, insofar as we disallowed any award to them for services performed subsequent to the date of the judgment of separation. (Services rendered prior to that date were recognized and paid as community liabilities); (b) Industrial Electric, Inc. and Industrial Outdoor displays, affiliated companies, the claims of which are for services performed to the sight-seeing service which was the property of the community formerly existing between Mr. and Mrs. Johnson. The District Court recognized the former Company's claim to the extent of $401.04 as a community liability arising from a contract executed prior to dissolution of the community.
[2] This judgment decreed a separation from bed and board between the parties "reserving unto both parties right to a partition of the property belonging to the community formerly existing between them." The present partition suit was instituted subsequent to this judgment.
[3] In some of these cases, the relationship to which the incidents of a partnership status has been attached has been denoted as a "joint adventure" or "joint venture." Since most such joint adventures fall within the codal definition of a "special commercial partnership", LSA-C.C. Article 2827, the utility in Louisiana of the term has been questioned. O'Neal, "An Appraisal of the Louisiana Law of Partnership", 9 La.L. Rev. 307, 333 (1949); Comment, "The Business Joint Venture in Louisiana", 25 Tul.L.Rev. 382, 383 (1951). Although possessing the substantive aspects of a partnership, the joint adventure is sometimes distinguished: "The legal relation of joint adventure * * * results from the undertaking by two or more persons to combine their property or labor in the conduct of a particular line of trade or general business, for joint profits, creating the status of a partnership, although the facts do now show formal partnership. While a joint adventure is not identical with a partnership, it is analagous to a partnership and is controlled largely by the principles or rules applicable to partnerships. But there is no joint adventure where an actual partnership exists * * * Ault & Wiborg Co. of Canada v. Carson Carbon Co., 181 La. 681, 688, 160 So. 298, 300; "`[W]hile a copartnership is ordinarily formed for the transaction of a general business of particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction.'" McCann v. Todd, 203 La. 631, 14 So.2d 469, 471.
[4] The total indebtedness claimed by this firm for services totalled $534.67 (not including the promissory note given by Mr. Johnson personally as collateral security after dissolution of the community.) However, the evidence does not reflect proof of unexplained items of $195.70 and $25.75, charged on July 31, 1953 and Dec. 30, 1953, respectively.