LAND, J.
Plaintiff, having obtained a judgment of separation from bed and board against the defendant, instituted the present action on May 18, 1904, for the purpose of ascertaining what property belonged to the community and of having the same sold to effect a partition between the parties.
Plaintiff prayed that an inventory be made of all the community property, that appraisers and experts be appointed to value the property and to report whether or not it could be divided in kind, that the joint ownership of the parties be recognized in all the property inventoried, for judgment decreeing a partition by licitation, and .ordering defendant to furnish a full and complete *259 account of all the community property, especially of the property inventoried at the inception of the suit for a separation, and of the conduct of the business since the issuance of the injunction therein, and that the parties he referred to a certain notary for the purpose of completing the partition.
The court appointed a notary to take an inventory and two appraisers and experts to value the property and to report whether or not the same was divisible in kind. No inventory, however, was taken, the parties agreeing to accept the previous inventory taken between October 27, 1902, and January 7, 1903. The total appraisement of property per said inventory was $192,756.07.
This agreement of the parties, of date May 19, 1904, is of such importance that we transcribe it in full, omitting title of suit and signatures, as follows, to wit:
“It is agreed between the parties to this suit, plaintiff being represented by her counsel, W. S. Parkerson, and defendant in his own proper person and by his counsel, Dinkelspiel & Hart, that for the settlement of the community heretofore existing between the parties to this suit Joe Garidel is hereby appointed as expert, under the following terms and conditions:
“First. That the inventory herein taken by W. F. Brewer, notary public, shall constitute the active mass of the community existing between plaintiff and the defendant (and no further inventory need be taken), and the defendant shall be charged with the full amount thereof, subject to the debts and charges against the community and the separate estate of the defendant, if any, the fees of the notary and the appraisers and of said expert, and the cost of the court, commencing with the petition for partition filed May 18, 1904.
“Second. And said expert shall add to said active mass any property belonging to said community that may have been omitted from said inventory, and the defendant shall account for same.
“Third. And the said expert, in order to make up the passive mass, shall ascertain, from the books of the defendant or otherwise, the debts of the community as they existed on October 24, 1902, and are yet unpaid; the debts of the community that existed-on October 24, 1902, and which have since been paid by the defendant; and the separate estate of the defendant, if any, which existed on August 17, 1881, and which was disposed of during the existence of the community, less the debts of the defendant that existed on that date.
“The fees of the notary, appraisers, and experts, if not agreed upon between the parties, shall be fixed by the coui't, and the final report of said expert shall be filed in court, for such further proceedings as the court may direct.”
The court appointed the expert named, in accordance with the agreement of the parties, and he was duly sworn.
The defendant shortly afterwards answered as follows:
“And for answer to the petition of plaintiff for the partition and settlement of the community existing between defendant and plaintiff avers that he is ready and willing at all times to make complete settlement of said community and to pay to plaintiff whatever she may be entitled to by virtue thereof and as may be decreed by final judgment herein.”
On July 18,1904, the expert filed his report, stating that he had examined all documents, books, and papers submitted to him, and presented the result of his investigations, establishing, in his opinion, the interest of each of the parties in the community which was dissolved on October 24, 1902.
It appears from said report, based on a thorough examination of defendant’s mercantile books, that the net balance of merchandise, tools, and fixtures on hand on October 24, 1902, should have been $294,420.-95, with bills receivable, cash, and open accounts, $298,029.25. The total of inventory October 24, 1902, was $192,756.67. Difference $105,272.58.
The expert found from the same books of defendant that the community owed $197,673.40, including $60,121.06 due separate estate of defendant of date August 17, 1881. The conclusion of the expert was that on October 24, 1902, there was a net balance in favor of the community amounting to $100,355.85; the interest of each party being $50,177.92.
The expert reported, also, what amounts each party had drawn from the community since October 24, 1902.
The defendant opposed the report of the expert on a number of grounds; the principal one being, in substance, that the ex *260 pert ignored the agreement of the parties to take the Brewer inventory as the basis of settlement, and substituted another and different inventory, which gave a different valuation to the assets.
Defendant opposed the report in four minor particulars, but did not otherwise assail or question its accuracy as a matter of bookkeeping or accounting.
The judgment of the court amended the report, so as to raise the net value of the community to the amount of $106,051.39, and condemned defendant to pay unto plaintiff $53,425.69, with legal interest from date of judgment, and ordered the costs of the partition proceedings to be equally divided.
It may be noted in this connection that the community assets in the possession of the defendant had been sequestered pendente lite, and had been released to defendant on bond for $200,000.
Defendant appealed from said judgment; and plaintiff, answering, has prayed that the same be amended by allowing interest from October 24, 1902, the date of the institution of the suit for a separation from bed and board.
The main contention of defendant is that the agreement of the parties was ignored by the expert and the judgment of the court a qua. It is argued that the expert should have charged defendant with the full amount of the Brewer inventory, as per first paragraph of the agreement, and then should have added to said active mass any property belonging to the community that may have been omitted from said inventory, as per second paragraph, and then, from the books of the defendant or otherwise, should have ascertained the debts of the community as they existed on October 24, 1902, etc., as per the third paragraph.
It is contended that under the second paragraph the functions of the expert were confined to the identification and valuation of particularly described property which may have been omitted from the Brewer inventory. The agreement reads “any property,” and provides that “the defendant shall account for the same.”
The assets of the community consisted mainly of a large stock of jewelry in the possession of defendant, who, 2 months and 24 days before the commencement of the taking of the Brewer inventory, had caused ap inventory of stock to be taken. Defendant was present and represented when the Brewer inventory was taken, and furnished the cost prices, which were made the basis of valuation.
The first invéntory and books of account are “good evidence” and “proofs” against the defendant. Oiv. Code, arts. 2248, 2249. The parties accepted them as showing the debts against the community; but, strange to say, counsel for defendant contend that said books “were not considered or embraced in said agreement, and have no place in the case.” See brief, p. 11. It was agreed that the expert should “ascertain, from the books of the defendant or otherwise,” the debts of the community, and it would be a singular perversion of common sense and justice to hold .that the books could not be used for the purpose of ascertaining the assets of the community. The second paragraph provides that the expert “shall add to said active mass,” represented by the second inventory, “any property belonging to said community that may have been omitted from said inventory, and the defendant shall account for the same.” The agreement did. not limit the sources of information, nor did it confine the addition to articles which could be specifically described and identified as missing from the stock of merchandise. The term “any property” is broad enough to cover any debt or obligation shown with sufficient legal certainty to be due by the defendant -to the community.
Hence, the first inventory being “proof” against defendant that he had in his posses *261 sion on July 14, 1902, assets of a certain aggregate cash value, and the second inventory on .October 24, 1902, having been accepted by defendant as a true statement of the cash value of all the property on hand at the latter date, it follows that the large discrepancy between the two inventories, not accounted for by the books of defendant, must represent missing assets belonging to the community. To put the case in a concrete shape: Supposing that on October 24, 1902, defendant had a large amount of insurance on his stock and fixtures, and the .same were on that day totally destroyed by fire; it is evident that in such a ease the defendant could have claimed that his books showed an actual loss amounting to $2Q4,420.95, and that no insurance adjuster would have had the hardihood to dispute the figures.
We think it too clear for argument that the burden of proof was on defendant to account for the enormous discrepancy between the stock he had and the stock he should have had on October 24, 1902, as shown by his own books. We also think it equally clear that such difference has not been accounted for, and that it should be added to the assets as shown by the second inventory. The objection that defendant is absolved, because plaintiff failed to identify the particular diamonds, rubies, and other gems missing from the stock is unworthy of serious consideration. We cannot construe the agreement of the parties as working any such estoppel, but must assume that it was their common intent that all the property and assets of the community should be included in the partition. In his answer, defendant avers that he is ready and willing to make a “complete settlement” of the community, and nothing less will satisfy the equality required by law in every partition.
We, therefore, are of opinion that the judgment below properly fixed the total merchandise on October 24, 1902, at $294,420.95, and total assets at $303,724.79. It may be noted in this connection that the October trial balance furnished by defendant’s bookkeeper shows;
Merchandise.................... $299,357 99
Total assets.................... 315,541 79
Excess over expert’s finding......$ 11,817 00
Defendant’s counsel argues that the merchandise in the first inventory was overvalued, but does not point to any evidence in support of that conclusion. In that inventory the articles were appraised, a large amount at their net value, another large amount 10 per cent, below cost, and a very small amount at a greater discount. In the second inventory, the appraisements were made on the general plan or basis. A larger number of articles were appraised at more than 10 per cent, reduction, but the difference of percentage would not materially change the general result If defendant considered the differences in valuation material, it was” incumbent on him to have had the inventories referred to an auditor for examination, comparison, and report. But, as the judgment is. based on the values fixed in first inventory, defendant is not prejudiced by the alleged undervaluation in the second; no depreciation in values being shown.
2. The defendant assigns as error that the court added to the report of the expert the sum of $6,487.60, value of fixtures.
According to defendant’s inventory of July 14, 1902, his tools and fixtures, less 20 per cent., amounted to $6,487.60. His October trial balance shows same item, $8,109.50.
There is no evidence before the court to show what articles entered into this total amount. It is contended by defendant that the second inventory shows tools and fixtures to the amount of $1,733.43, made up of trays for jewelry, boxes, scales, cases, rotary fan, paintings, pictures, turning lathes, shears, vises, presses, benches, ladders, electric motor, rollers, etc., and that this amount should be deducted from the debit item of $6,487. It is evident that all tools and fixtures were in- *262 eluded in this item, and that there has not been a double charge.
3. The court did not err in allowing interest on the judgment. All the assets of the community were in possession of the defendant and had been at his free disposal since May 20, 1904, the date of the dissolution of the injunction by consent of parties. Thereafter defendant had the free use of said assets, and plaintiff is entitled to interest on her share therein; otherwise, the defendant joint owner would reap all the rents, revenues, and profits accruing from the common property. The judgment, however, should be amended by allowing legal interest from May 20, 1904, instead of from date of judgment.
4. As the judgment purports to be a final settlement between the parties, without any reservation, it is clear that plaintiff should be charged with $3,150 received by her for alimony as per report of expert, and all other sums since received by her on the same account.
5. Counsel for defendant in supplemental brief has raised objection for the first time to the report of the expert as to amount of sales of merchandise, and has also instituted a comparison between the relative valuations in the two inventories, without, however, informing the court as to the practical result of such comparison.
These are entirely new objections, raised for the first time by supplemental brief.
The report' of the expert was not objected to on this ground, nor was the objection made in the motion for a new trial. It cannot be reasonably expected that this court will undertake to reaudit the books or remand the case for that purpose, on the belated objections of defendant made for the first time in supplemental brief. The question of relative valuation has already been considered.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by deducting therefrom the sum of $3,150, paid as alimony, as per the expert’s report, and by allowing legal interest from May 20, 1904, and that, as thus amended, said judgment be affirmed; plaintiff and appellee to pay the costs of appeal. It is further ordered and decreed that the right of defendant be reserved to compensate pro tanto the judgment herein rendered by any other additional sum or sums he may have paid to her on account of alimony.