**86 So.2d 169**

**William W. MESSERSMITH, Jr.**

**v.**

**Mrs. Hilda Louise St. Martin MESSERSMITH.**

**No. 41947.**

Feb. 20, 1956.

James G. Schillin, New Orleans, for defendant and appellant.

Harry P. Gamble, Jr., New Orleans, Gamble & Gamble, New Orleans, of counsel, for plaintiff and appellee.

SIMON, Justice.

On June 5, 1947, Mrs. Hilda Louise St. Martin Messersmith filed suit for a separation from bed and board against her husband, William W. Messersmith, Jr., the temporary care, custody and control of their minor child and an award of alimony pendente lite for the maintenance and support of herself and child. As an incident to said suit, the district judge granted the provisional care, custody and control of said child to the plaintiff-wife and issued a restraining order prohibiting the husband from disposing of or alienating community assets. Rules nisi previously issued were made absolute and after due hearing the defendant-husband was condemned to pay alimony pendente lite to plaintiff for the maintenance and support of herself and minor child in the sum of $225 per month, beginning July 1, 1947. A preliminary injunction was issued against the defendant and Woodward-Wight & Co., Ltd., restraining and enjoining either or both from disposing of the shares of stock in Woodward-Wight & Co., Ltd., bearing the name of defendant-husband, and he was further enjoined from disposing of or encumbering other community assets.

The defendant-husband entered, in effect, a general denial, and in assuming the position of plaintiff-in-reconvention prayed for a judgment of separation from bed and board in his favor for causes alleged. After a trial on the merits, judgment was rendered on March 8, 1949 and signed on March 25, 1949, dismissing plaintiff-wife's demand, and awarding a separation from bed and board in favor of the husband; custody of the minor child was awarded to the husband; and no provision was made for alimony in favor of the wife.

On March 11, 1949, during the interim between the date the judgment was rendered and the date it was signed, the wife sought by motion to have the alimony pendente lite awarded to her by judgment of July 1, 1947, increased. The lower court denied her demand, and on appeal before us the judgment denying the relief sought by her was affirmed.[1]

On April 8, 1949, the husband filed a separate suit for divorce on the statutory ground of two years' separation. He alleged that the original separation of the spouses was due to the fault of the defendant-wife and in substantiation thereof incorporated the entire record of the suit for separation from bed and board filed by his wife. He also sought the permanent care, custody and control of his minor son.

For answer the defendant-wife entered, in effect, a general denial and alleged that the fault of their separation rested solely with plaintiff. Assuming the position of

1. St. Martin v. Messersmith, 218 La. 239, 48 So.2d 909.

plaintiff-in-reconvention she sought a judgment of divorce in her favor, custody of their child, alimony for herself and child, and an injunction prohibiting the disposal or alienation of any community assets.

On October 20, 1949, the district judge rendered judgment granting a divorce in favor of the husband. The defendant-wife's demands were dismissed except she was awarded the custody of the child with reservation of the right to claim alimony for his support from the father. The judgment further ordered the taking of an estimative and descriptive inventory of all community assets and a partition thereof between the parties. Pending said partition the husband was enjoined from disposing of or alienating community assets in his possession or under his control until the final disposition of the respective rights of the parties. From this judgment no appeal was taken by either party.

Subsequent to the final decree of divorce the parties entered into a written stipulation agreeing and consenting to an amicable liquidation and partition of a considerable part of the property forming the community of acquets and gains existing between them in lieu of a formal notarial act of partition, the contested issues being left for determination of and judgment by the district court, predicated upon a stipulation of facts and admissions. Giving full force and effect to the stipulations and agreements entered into by the parties, the district court rendered judgment partitioning the community effects and decreeing the relief to which, in his opinion, each party was entitled. The defendant-wife has appealed, assigning specific errors to the portions of said judgment prejudicial to her; and the husband has answered the appeal.

Counsel for both parties, in briefs and oral arguments, having limited their appeals to the errors assigned as prejudicial to their respective interests, we shall consider these alleged errors in the order reflected by the judgment.

Under Article II of the judgment of the district court it was decreed that the 225 shares of stock of Woodward-Wight & Co., Ltd., and the 13 shares of stock of Republic Steel Corporation to be the property of the community and that said stock should be equally divided between the parties. Neither party contested the partition in kind of the Republic Steel Corporation stock. However, the husband, who is an employee of Woodward-Wight & Co., Ltd., contends that the Woodward-Wight stock should not be divided in kind, but that he should be allowed to retain all of said stock and pay to his wife one-half of its book value and asserts, in support thereof, a provision in the charter of the Woodward-Wight & Co., Ltd., which provides that before any stockholder can sell stock he must first offer the same to his co-shareholders or to the officers of the corporation. Obviously, the purpose of this restrictive provision was to retain in the officers and employees the ownership of the stock of said company.

Under the expressed provisions of our LSA–Civil Code, "Every marriage contracted in this State, superinduces of right partnership or community of acquets or gains, * * *" Article 2399, and "This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. * * *" Article 2402.

 is nothing more fundamental in our law than the rule of property which declares that this community is a partnership in which the husband and wife own equal shares, their title thereto vesting at the very instant such property is acquired. Dixon v. Dixon's Ex'rs, 4 La. 188, 23 Am. Dec. 478; Theall v. Theall, 7 La. 226, 26 Am.Dec. 501; Succession of Marsal, 118 La. 212, 42 So. 778; Succession of May, 120 La. 692, 45 So. 551; Beck v. Natalie Oil Co., 143 La. 153, 154, 78 So. 430; Ramsey v. Beck, 151 La. 190, 91 So. 674; Phillips v. Phillips, 160 La. 813, 107 So. 584; Pfaff v. Bender, D.C., 38 F.2d 642; Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75

L.Ed. 252; Succession of Wiener, 203 La. 649, 14 So.2d 475.

We have repeatedly adhered to the doctrine that the half ownership of the wife in the community effects, its status not resting upon the mere gratuity of the husband, is entitled to a dignity equal to that of the husband's; and upon its dissolution and liquidation the wife is entitled to secure the delivery of this one-half right and ownership into her own exclusive management and control; and the courts have no discretion or power whatever to award her less.

 Our codal laws also declare that after the marriage the spouses can do nothing to alter the effect between themselves of our community laws. LSA–C.C. 2329.

 Plaintiff-appellee, however, seeks to alter our community law provisions or the status of the Woodward-Wight stock in question, asserting that the restrictive provisions in the charter prevent the recognition of the wife's one-half right and ownership thereof and her right to be delivered in kind the interest falling to her. His position is wholly untenable. The restriction in the charter cannot affect the status of the stock purchased during the existence of the community or the rights the wife may assert thereunder. Such a restriction cannot negative the wife's present interest as a co-owner, and as a co-owner in community she is clearly entitled to be recognized as such and obtain the exclusive man-

agement and control of her vested interest. Succession of Helis, 226 La. 133, 75 So.2d 221; Land v. Acadian Production Corporation of Louisiana, D.C., 57 F.Supp. 338; Henderson's Estate v. Commissioner of Internal Revenue, 5 Cir., 155 F.2d 310, 164 A.L.R. 1030.

Under Article IV of the lower court's judgment, a certain Woodward-Wight & Co., Ltd., group annuity certificate was declared to be valueless, and for that reason was held to form no part of the assets of the community existing between the spouses.

The descriptive and estimative inventory of the community shows that on December 1, 1942, during the marriage of the litigants, the Equitable Life Assurance Society issued to plaintiff an individual employee certificate, being identified with a group annuity plan of Woodward-Wight & Co., Ltd. It is conceded that payment of the premiums of the retirement plan in the sum of $543.50 were made from community funds. Plaintiff admits that he should account for the cash surrender value of certain other policies listed on the inventory, but contends that the group annuity certificate had no cash or loan value on the date of dissolution of the community and would never have a cash or loan value at any time except upon his resignation or retirement as an employee of Woodward-Wight & Co., Ltd., or upon his death.

The defendant-wife contends that this individual certificate of insurance having been taken out during the marriage and be-ing an asset of the community she is entitled to be recognized as the owner of an undivided one-half interest therein, even though at the present time it has no value. Alternatively, she contends that the community should be credited in the final accounting for the amount of community funds contributed to the annuity plan for the benefit of the husband.

■ At the outset it must be recognized that life insurance policies made payable to the insured, or to his executors, administrators, or assigns, are community property if taken out during the marriage. Estate of Moseman, 38 La.Ann. 219; Succession of Buddig, 108 La. 406, 32 So. 361; Succession of Verneuille, 120 La. 605, 45 So. 520; and Succession of LeBlanc, 142 La. 27, 76 So. 223, L.R.A. 1917F, 1137.

Group annuity policies, such as the one here involved, have no reserve or cash surrender value before the happening of the event on which the insurance becomes payable. Consequently, the individual certificate under the annuity plan had no value as a tangible asset on March 25, 1949, the date of dissolution of the community by judgment of separation from bed and board. However, irrespective of its value or lack thereof, it is an asset to be inventoried and ultimately subject to partition between the spouses to the extent of their respective interests and rights.

Article 460 of the Revised Civil Code provides:

"Things are divided, in the second place, into corporeal and incorporeal.

\* \* \* \* \* \*

"Incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding; such as the rights of inheritance, servitudes and *obligations*." (Emphasis ours.)

Under Article 470 of the Code, "Incorporeal things, consisting only in a right, are not of themselves strictly susceptible of the quality of movables or immovables; nevertheless they are placed in one or the other of these classes, according to the object to which they apply and the rules hereinafter established."

Under Article 475, "All things corporeal or incorporeal, which have not the character of immovables by their nature or by the disposition of the law, according to the rules laid down in this title, are considered as movables."

Under Article 870, "The ownership of things or property is acquired by inheritance either legal or testamentary, by the effect of obligations, and by the operation of law."

▰ Under these definitions, we are of the opinion that the individual certificate of insurance under the group annuity plan was an incorporeal, movable thing acquired by the husband during his marriage with appellant and therefore constituted an asset of the community. This certificate, irrespective of its value or its lack of value at the time of the dissolution of the community, being an incorporeal, movable thing, is property as defined by our law, from which benefits necessarily flow in favor of the wife as a community partner. Furthermore, it is stamped as property because it includes contract rights and obligations to receive money or other benefits to become due in the future, even though contingent upon the happening of an event at an uncertain time. The right to these benefits, however, is a community asset to be inventoried as such, entitling the wife to recognition of a one-half interest therein as of the date of its dissolution.

Article V of the lower court's judgment decrees that cash dividends on stock certificates issued by Woodward-Wight & Co., Ltd., amounting to $31,500 and that cash dividends on stock certificates issued by Republic Steel Corporation amounting to $300.12, or cash dividends totalling $31,800.12, are assets of the community and as such are to be charged and debited with the sum of $9,090, the sum representing alimony paid by plaintiff to defendant, leaving a balance of $22,710.12 to be equally divided between the parties.

Plaintiff contends that the conclusion reached by the lower court in this respect should be affirmed. He further contends that said alimony was paid from the dividend income from the Woodward-Wight and Republic Steel stock certificates, thus

requiring him to account for the balance of $22,710.12.[2] On the other hand, the wife contends that the said alimony is a debt for which the husband alone is responsible.[3]

Even though the parties have stipulated that the husband paid "alimony" in the amount of $9,090 from June 5, 1947 to October 23, 1950, there arises a dispute between them as to whether the alimony so paid should be levied against the community estate or against the estate of the husband. Though the judgment of separation did not award alimony in favor of the wife, it cannot be disputed that alimony paid at the rate of $225 per month from July 1, 1947 until March 25, 1949, a total sum of $4,725, was alimony pendente lite. The balance in the sum of $4,365, or any other sum paid after the date of this judgment of separation, cannot be construed to be alimony pendente lite.

▉▉▉ The law governing alimony pendente lite is as follows:

" 'Article 148 of the (Revised) Civil Code declares that, in a suit for separation from bed and board, or for divorce, if the wife, whether she be plaintiff or defendant, has not a sufficient income for her maintenance during the pendency of the suit, the judge shall allow her a sum for her support, proportioned to her needs and to the means of her

husband. That is the authority for the courts to allow alimony pendente lite in this state. The right of the wife to such alimony does not depend at all upon the merits of the suit for separation from bed and board, or for divorce, or upon the actual or prospective outcome of the suit. The reason for that is that an order to pay alimony pendente lite is merely an enforcement of the obligation of the husband to support his wife as long as the marriage remains undissolved. LeBeau v. Trudeau, 1 Mart., N.S., 93; Holbrook v. Holbrook, 32 La. Ann. 13; Suberville v. Adams, 46 La. Ann. 119, 14 So. 518; State ex rel. Huber v. King, Judge, 49 La.Ann. 1503, 22 So. 887; State ex rel. Hill v. Judge, 114 La. 44, 38 So. 14; Nissen v. Farquhar, 121 La. 642, 46 So. 679; Donnels v. Bouillion, 165 La. 145, 115 So. 439; Brouilette v. Mallet, 180 La. 787, 157 So. 594; Anzalone v. Anzalone, 182 La. 234, 161 So. 594; Arnold v. Arnold, 186 La. 323, 172 So. 172; Cotton v. Wright, 189 La. 686, 180 So. 487.' Grisamore v. Grisamore, 191 La. 770, 773, 774, 186 So. 98." Eals v. Swan, 221 La. 329, 59 So.2d 409, 411. See, also, St. Martin v. Messersmith, supra.

▉▉▉ In the recent case of Tanner v. Tanner, 229 La. 399, 86 So.2d 80 (Hami-

---

2. Relying on Hill v. Hill, 115 La. 489, 39 So. 503; White v. White, 159 La. 1065, 106 So. 567; Uchello v. Uchello, 220 La. 1061, 58 So.2d 385.

3. Relying on Talbert v. Talbert, 199 La. 882, 7 So.2d 173.

ter, J.) in a well-reasoned and rather exhaustive opinion, we held, and it is now settled, that the community of acquets and gains existing between the spouses is dissolved, not as of the date of filing of the suit for separation or divorce, but on the date of the judgment of separation from bed and board or divorce. It follows, therefore, that in the instant case the husband is accountable to the community for the cash dividends received by him until the date of the dissolution of the said community by the decree of separation from bed and board rendered on March 25, 1949.

 The order to pay alimony pendente lite; being merely an enforcement of the obligation of the husband to support his wife as long as the marriage remains undissolved and the community between these litigants having valuable assets from which the charges of alimony pendente lite might be acquitted, we conclude that the payments of alimony pendente lite at the rate of $225 per month made by the husband from June 5, 1947 until March 25, 1949, or the sum of $4,725, are chargeable against the husband as head and master of the community and made payable out of community funds.

 In regard to the balance of $4,365 paid at the rate of $225 per month (from March 25, 1949 until October 23, 1950), we conclude that these payments having been made after the dissolution of the community by judgment of separation are not chargeable against the community nor tne

husband's separate estate. We are aware of the law that the husband may be called upon to support his wife following judgment of separation from bed and board. However, such relief can only be granted by order or judgment of court invoking our pertinent codal provisions. In the instant case, the wife's demand for alimony subsequent to the judgment of separation was denied by the court below.

It follows, therefore, that the cash dividends received by the husband subsequent to the dissolution of the community were owned in indivision by plaintiff and defendant, and the husband is accountable to the wife for her one-half undivided share thereof. Hence, the alimony payments made subsequent to the dissolution of the community should be levied against the wife's one-half undivided and separate share of the cash dividends so received by him. We consider such payments to be merely advancements made to her from her undivided one-half share in said cash dividends.

 VII of the lower court's judgment decrees the respective liabilities of the spouses' relative federal and state income taxes. It appears that from the date of the filing of the suit for separation from bed and board the husband received annual cash dividends from certificates of stock issued by Woodward-Wight & Co., Ltd., and Republic Steel Corporation. It also appears that the husband and wife filed separate income tax returns, but payment thereof actually being made by the husband, this

during the taxable years beginning June 5, 1947 and ending October 20, 1950.

Without ascertaining or computing the indebtedness of one to the other or fixing the specific amount to which reimbursement may be due, as previously observed, the community of acquets and gains remains in existence for all intents and purposes until its dissolution, namely, the date of the rendition of judgment of separation from bed and board.

Hence, all sums expended for income tax prior to the rendition of judgment of separation from bed and board, March 25, 1949, must be held to be debts of the community and to be payable out of community funds. And it logically follows that once the community became dissolved, in the instant case on March 25, 1949, any sum expended by the husband for tax due on revenue belonging to him and his wife cannot be held chargeable against the community but is dischargeable by both in proportion to their undivided rights and interest in the taxable income.

■■■ Article VIII of the lower court's judgment decreed that plaintiff be declared the owner of a 1940 Chevrolet 2-door Sedan automobile and that he be charged and the community credited with its appraised value of $500, which appraisal plaintiff complains is excessive and should be reduced to $275.

The original purchase price of the car was $815, and the use thereof was enjoyed exclusively by plaintiff from 1947 until 1950 when in purchasing a new automobile he received a trade-in credit of $500. The findings of fact by the court below relative to this item are fully supported by the record, and we find no reason to disturb same. See White v. White, supra.

Article X of the trial court's judgment rejected plaintiff's demand for a credit of $875.24 allegedly brought by him into the marriage. Plaintiff and defendant were married on June 18, 1930. Plaintiff's bank book reflects that on June 5, 1930 he had a balance of $875.24; on June 17, 1930, a balance of $575.24; and on June 18, 1930, a balance of $325.24. The record discloses that subsequent deposits and withdrawals were indiscriminately made, which in effect constitute a commingling of the funds. On May 20, 1933 there was a balance of $112.05, which sum was subsequently paid out in liquidating dividends to the depositor.

■■■ Plaintiff contends that the funds in said account were expended for the enhancement of the community, therefore entitling his separate estate to a reimbursement for that amount. The record is barren of any proof whatever that the community was enhanced in value or that it received any specific benefit by the use of separate funds of the husband. In order for him to recover separate funds brought into the community, he must not only show that he had such separate funds but that they were actually used for the benefit of the community. This alleged separate fund

having been indiscriminately commingled with community funds so as to make it impossible to segregate them, there can be no indebtedness therefor levied against the community. Succession of Provost, 190 La. 30, 181 So. 802.

In the Succession of Bell, 194 La. 274, 193 So. 645, 647, on rehearing we held:

"There is no fixed rule or standard of proof required to establish that the contribution of the separate funds of the husband has been used to benefit the community. To establish such a claim it must be shown with reasonable certainty that the community still had the benefit of the contribution at the time of its dissolution, and that the separate funds were not wasted by the husband or disposed of for his separate benefit. Munchow v. Munchow, 136 La. 753, 67 So. 819; Succession of Ferguson, 146 La. 1010, 84 So. 338; Succession of Provost, 190 La. 30, 181 So. 802."

Plaintiff's demand for credit of $875.24, the sum brought into they community by him, was correctly rejected.

Defendant-appellant complains that the trial court's judgment inadvertently fails to provide interest from the date of judgment rendered herein on the net amount found to be due to her by plaintiff in these partition proceedings.

As previously observed, to an end to expedite this protracted litigation, the parties, on June 22, 1953, entered into and filed stipulations upon which predicated the final judgment of partition dated May 17, 1954, fixing the respective rights and liabilities of the spouses to each other and ordering distribution of the community assets as therein detailed, and resolving the mutual moneyed demands of the parties, resulting in a net money judgment in favor of the wife for $4,893.17.

It appears that the pleadings filed by the wife failed to specifically demand interest, or to pray therefor, on any amount to be ultimately adjudged due her by the husband. However, prior to the rendition of this final judgment, defendant-wife filed a motion on March 1, 1954, seeking authority to file an appropriate supplemental demand for interest from date of judgment. This motion was overruled on March 19, 1954.

The husband contends that no interest is due because (1) he has not had the enjoyment of the community assets since as a result of the injunction originally issued and in force; and (2) that since the wife provoked and perfected the appeal she has thus prevented the execution of the judgment, and her demand for interest would, therefore, be inequitable.

These contentions are untenable. The wife has a legal right to demand that injunctions issue to protect her rights and interest in and to community property in the control of her husband; and she has a right to provoke and perfect an appeal from the judgment she believes detrimental

to her rights. No penalty can be imposed for the exercise of such rights.

 Our law is well settled that amendments to pleadings should be permitted where they tend to further justice, cause no injury and are without prejudice to the right of the other party. Should the other party plead surprise, he may obtain time to prepare adequate defense. Our modern-day tendency is to relax the technical rules of pleading in order to arrive at the truth, afford a litigant his day in court and avoid a miscarriage of justice. Ruiz v. American Trading Co., 167 La. 28, 118 So. 597; Seale v. Stephens, 210 La. 1068, 29 So.2d 65.

 However, the defendant-appellant's demand for interest from date of judgment does not necessitate an amendment of pleadings. The case of Hill v. Hill, 115 La. 489, 39 So. 503, 506, involved in part the partition of community effects between the parties, and we allowed interest from date of judgment, saying, on rehearing:

"We find that there is no allegation by the plaintiff that interest is due, and no prayer that it be allowed.

"It is therefore ordered and adjudged that the rehearing applied for be refused, that the decree heretofore handed down be amended with respect to interest allowed, and that the judgment appealed from, allowing interest

from the date of said judgment, * * * be affirmed."

Both our Civil Code and our Code of Practice provide in almost identical language that interest at the rate of 5% per annum shall be allowed on all debts from the time they become due unless otherwise stipulated.[4] The judgment in this instance having recognized an indebtedness in favor of the wife, and, accordingly, under the prevailing law hereinabove referred to, this indebtedness is now held to bear interest at 5% per annum from the date of the judgment, May 17, 1954, until paid.

Accordingly, for the reasons assigned, Article IV of the judgment of the district court herein appealed from insofar as it relates to a certain Woodward-Wight group annuity certificate is reversed and set aside, and said certificate is hereby declared to be community property entitling defendant-appellant to her one-half undivided interest and right therein;

Article V of the judgment insofar as it relates to alimony payments and the funds used therefor is set aside and amended so as to coincide with the views herein expressed;

Article VII of the judgment insofar as it relates to liability for income taxes paid for and on behalf of both parties is set aside and amended so as to coincide with the views herein expressed;

4. LSA–Civil Code Article 1938; Code of Practice Article 554.

The judgment herein appealed from is amended so as to include legal interest from date of rendition of judgment, May 17, 1954, on the net amount, if any, found to be due to defendant-appellant by plaintiff-appellee.

Article XIII of the judgment insofar as it recaps the respective charges to plaintiff and defendant is set aside and amended so as to coincide with the views and opinion rendered herein;

In all other respects the judgment appealed from is affirmed, and this cause is now remanded to the trial court for proper computations and amendments as to the respective rights and liabilities of the parties hereto, not inconsistent with the views herein expressed.

HAMITER, J., concurs in part and dissents in part assigning written reasons.

MOISE, J., concurs.

FOURNET, C. J., absent.

HAMITER, Justice (concurring in part and dissenting in part).

With reference to the Woodward-Wight group annuity certificate (Article IV), I am of the opinion that the wife's alternative contention should be sustained, it being that "the community should be credited in the final accounting for the amount of community funds contributed to the annuity plan for the benefit of the husband." Otherwise, I concur in the decree.