McBRIDE, Judge.
The parties were separated from bed and board by judgment herein rendered November 25, 1959; a judgment of divorce was rendered January 27, 1961. The matter before us involves the partition of the community property. Two judgments were rendered, one dated April 25, 1966 and the other July 15, 1966, ordering a partition, in conformity therewith, of certain community funds on deposit in the Registry of the Court and also community funds on deposit in Dixie Homestead Association in New Orleans. The judgment lastly above mentioned referred the matter to a notary public to effect the partition in accordance with such judgments and in due course the notary filed his proces verbal which the wife opposed. By judgment dated December 2, 1966, the opposition was dismissed and the proces verbal was homologated.
The husband has appealed devolutively from the judgments of April 25, and July 15, 1966. The wife appealed devolutively from the July 15, 1966, judgment and sus-pensively from the judgment which dismissed her opposition and homologated the partition.
The husband’s motion to dismiss the wife’s suspensive appeal on the ground the appeal bond is insufficient in amount cannot be considered. The trial court retains jurisdiction to consider objections to the form, substance and sufficiency of the appeal bond. C.C.P. 2088.
Adverting now to the merits of the case, each party has assigned specific errors in the composition of the partition made below.
(1) Firstly, both object to the award by the trial court of $15,137.36 in reimbursement of the wife for separate funds which she used to pay and discharge the husband’s one-half of a mortgage indebtedness restmS on the former matrimonial home. The husband contends that said award should be disallowed in toto and in fact he should be allowed to share in *904 the profits of the subsequent sale of the mortgaged property made by the wife. The wife, on the other hand, seeks an increase in the award.
The admitted facts are that on October 6, 1960, after the decree of separation from bed and board, but prior to the divorce, the family home known as No. 12 Park Lane, a community asset valued at $85,000, was sold at public sale at the instance of the United States Department of Internal Revenue (see U.S.C.A. 26:6331 et seq.) to enforce a lien thereon for unpaid federal income taxes due for a prior year on community income. At the public offering the wife became adjudicatee of the property for $20,000 (the amount of the tax lien) and received from the District Director a “Certificate of Sale of Seized Property” transferring to her “all right, title and interest of said Jacques and Yvonne F. Fortier” in and to the property sold. The wife paid the $20,000 out of her separate funds.
The community of acquets and gains lately existing between the parties hereto was dissolved by the judgment of separation from bed and board on November 25, 1959. R.C.C. arts. 136 and 155; Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169; Tanner v. Tanner, 229 La. 399, 86 So.2d 80. Upon dissolution of the community quoad the community property the parties became co-owners thereof in indivisión. Fleury v. Fleury, La.App., 131 So.2d 355 and cases cited therein. They each became liable for one-half of the community debts. R.C.C. art. 2409. The wife separated in property again became the free administrator of her estate and had the legal right to purchase property in her own name and for her separate account. R.C.C. art. 2436; Lewis v. Peterkin, 39 La.Ann. 780, 2 So. 577; Chaffe v. DeMoss, 37 La.Ann. 186; Snoddy v. Brashear, 13 La.Ann. 469. She may become the purchaser of the husband’s property under seizure. Lehman v. Barrow, 23 La.Ann. 185.
Mrs. Fortier acquired only her husband’s interest in the property at the aforementioned sale and was to all intents and purposes a third person with respect to such purchase. We say she acquired only her husband’s interest because it would be legally impossible for her to have acquired at the tax sale the undivided one-half interest of which she was alreády the proprietor. The effect of her paying the $20,000 to the Internal Revenue Department was to satisfy her one-half of the tax indebtedness ($10,000) bearing against her one-half ownership of the property, the other $10,-000 being the purchase price of all “the right, title and interest” of her husband. See U.S.C.A. 26:6339(b) (2).
At the time of the rendition of the judgment of separation from bed and board the property was encumbered by a $45,000 vendor’s lien mortgage held by the Dixie Homestead Association, which was a debt of the community and primed the tax lien. At the time of the public sale the amount due on the mortgage had been reduced to $43,477.01, but several installments on the mortgage note were in arrears. A few days after her acquisition the wife, with her own separate funds, paid the mortgage creditor a sufficient amount to satisfy the arrearages and to reduce the mortgage to $40,702.29. She continued to pay installments regularly as they matured until she sold the property to her vendee for $82,000 on September 17, 1965, at which time she paid the full balance owed the mortgagee in the amount of $28,339.65 and had the inscription cancelled from the mortgage office.
The wife argues that because she paid and satisfied a community mortgage indebtedness with her separate funds she became, under R.C.C. art. 2161(3), the subrogee of the mortgagee, and, therefore, the fictive community owes her $60,667.66.
On the other hand, the husband contends that the community should not be charged with any part of the funds the wife expended in payment of the homestead mort *905 gage. His theory is that at the public sale the wife did not acquire his share of the property. He cites Miller v. Vivian Oil Co., 131 La. 761, 60 So. 236, in support of the proposition he advances that when a co-owner buys property at a foreclosure sale, the purchase inures to the benefit of the other co-owner. There is no merit to the contention. The husband was present in person at the auction sale and had an equal opportunity to bid for the property himself and was cognizant of the fact that his wife was acting for her own separate and paraphernal account. The facts in the cited case are entirely different from those before us. In Miller v. Vivian Oil Co., supra, one co-owner had assumed, quoad certain of his co-owners and the mortgagee, a debt bearing upon the common property, and then allowed the property to be exposed to public sale under a writ of seizure and sale for the very debt he assumed and thereat he bought the property without giving notice to the other-owners. Under these peculiar circumstances the result in the case was a holding that the title thus acquired at the foreclosure sale inured to the benefit of the other co-owners in proportion to their respective interests and subject to the payment by them to the purchaser of a like proportion of the amount paid by him in satisfaction of the writ. In the instant case the husband was divested of his interest by virtue of the tax lien sale. If the wife, when she subsequently sold the property, was fortunate enough to make a profit, the husband has no valid claim for any part thereof.
We think that the trial judge erred in allowing reimbursement to the wife for any amount of her funds used in discharging the one-half of the mortgage indebtedness which bore against the husband’s interest in the property. It is true the “Certificate of Sale of Seized Property” nowhere recites that the wife assumed, promised or agreed to pay the husband’s share of the mortgage indebtedness owed Dixie Homestead Association, and, as she simply purchased the husband’s share subject to that mortgage, she did not become personally liable for the indebtedness. However, the property itself remained nonetheless bound for the amount of the mortgage debt, including all arrearages, its accessories and incidents. Gauche v. Gerdes, 10 Or.App. 56. In other words, the mortgage followed the property in the wife’s hands and stood as security for the debt. See R.C.C. art. 3399. The wife is in the inequitable and untenable position of claiming ownership of her husband’s half of the property at the same time she endeavors to repudiate responsibility for the indebtedness secured thereby. If she were allowed to recoup half her mortgage expenditure from the husband there would ensue a classic example of unjust enrichment. The wife would then be in the position of having acquired the husband’s half interest in an $85,000 parcel of property for $10,000. The turn of events found in this case renders impossible any subro-gation which ordinarily takes place for “him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.” (R.C.C. 2161, par. 3). Mrs. Fortier at all times knew that any ownership she acquired in the property would be subject to the mortgage and that she would have no clear and unencumbered title until the debt was satisfied. An announcement to that effect was made when the property was offered. The payment of the mortgage did not benefit the husband or the fictive community, because the husband’s share of the debt was well secured by his half interest in property valued at an amount far in excess of his indebtedness.
The wife only acquired an equity. This principle was set forth by our Supreme Court in the early case of Balfour v. Chew, 4 Mart. (N.S.) 154, wherein it was stated:
“The return of the officer states, the land was sold subject to the mortgage; the deed uses the same expressions, and neither makes mention it was sold sub *906 ject to the payment by the purchaser. * * * If the purchaser became personally responsible for the mortgage debt, the amount of this engagement would make a part of the sum he was to pay for the land, and consequently his bid be for the absolute value. But when the land alone is made liable, there is no personal obligation on the purchaser beyond that which he promises to pay the seizing creditor; hence the bid can be viewed in no other light than one for the surplus value, * *
The rule is stated in 59 C.J.S. Mortgages § 397, at page 561, thus:
“Where a conveyance of land is made expressly subject to an existing mortgage, or where the mortgage is expressly excepted from the covenants in the deed, or, it has been held, where the assignee of an equity of redemption accepts a deed without covenants, the purchaser takes merely the equity of redemption, and the conveyance amounts merely to a conveyance of whatever interest or estate the grantor has after the .debt is satisfied out of the land.”
We have already said that, with respect to the property, Mrs. Fortier to all intents and purposes was in no better position than any third person who might have bought it, and merely because she was the mortgagor’s wife and his co-debtor she occupied no preferential status. Had some stranger bid in the property under the same circumstances there is no law or jurisprudence of which we are cognizant which would have subrogated him to the mortgage debt upon his paying it.
We think that 59 C.J.S. Mortgages § 402, at page 568, correctly sets forth the law applicable to the instant case, viz:
“A purchaser of land subject to mortgage who pays the mortgage debt is not entitled to reimbursement by the mortgagor in the absence of agreement, express or implied, therefor, the presumption being, as discussed supra * * * that he bought the land at its value, less the amount of indebtedness secured thereby.”
The case of Hilgenfeld v. Hilgenfeld, La.App., 180 So.2d 236, cited by the wife, is not applicable. In that case mortgaged community property was partitioned between the spouses after a judicial separation without mention of the mortgages. The wife subsequently paid the balance due on the mortgage indebtedness. The court held the wife was legally subrogated to all the benefits of the mortgages and could enforce the same, to the extent of her former husband’s virile share thereof, against that part of the property, not owned by her, which had been transferred to the husband by partition.
In judicial sales in Louisiana the sheriff shall announce that the property is to be sold for cash subject to any mortgage, lien or privilege thereon superior to that of the seizing creditor. C.C.P. 2335. If there is a mortgage, lien or privilege on the property superior to that of the seizing creditor, the purchaser shall pay to the sheriff only that portion of the sale price which exceeds the amount of the superior mortgage, lien or privilege. C.C.P. art. 2374. Said articles accord with articles 679 and 683 of the late Code of Practice. Our law requires that at a judicial sale the purchaser shall bid for the full value of the property with the right to retain in his hands out of said price sufficient money to pay mortgages, liens and privileges superior to that of the seizing creditor. In the sale conducted by the Internal Revenue Department only the delinquent taxpayer’s equity was transferred. At any rate, in either case the end result would be the same because it becomes incumbent upon the adjudicatee to pay up superior mortgages, liens and privileges in order to perfect an unencumbered title to the property.
*907 (2) The separation from bed and board had the effect of dissolving the community as of its date, November 25, 1959, or after approximately %ths of the year 1959 had elapsed. The wife contends the husband is accountable to her for half of 1:542ths of his 1959 income of $24,237.34. He filed a separate federal income tax return for the year 1959, which is in evidence, and according to it he divided with his wife the profits of a joint real estate venture, her share being $14,840.85 which he declared on his return was being reported by her on her separate income tax return for 1959. His return showed the wife was entitled to half of 1:!42ths of the profits from his mortgage business amounting to $7951. He does not dispute he owed her half of ^Usths of his 1959 income; however, she denied ever receiving any money from him for said year except alimony payments. Unfortunately, her income tax return is not in the record and we are • unable to determine whether she reported the money her husband alleges he gave her. Under these circumstances we think there should be a remand of the case so as to permit the introduction of the wife’s income tax return for 1959 and any other evidence to substantiate or disprove the husband’s claim he gave her half the 1959 income.
(3) The parties dispute whether the profit of $2191.37 earned by the husband in a joint real estate venture was included in the above calculation on his 1959 income. Nothing appears in the record that would enable us to determine whether this sum was included. According to his tax return all profits were divided with his wife. At the trial the husband was given no opportunity to clarify just what was done with the profits. The final testimony concerning this item was: •
“Q. So, sir, deducting that $9,517.88 from the figure you received of $11,709.25 leaves a mathematical balance of $2,191.37. You retained that balance in your possession, is that correct?
“A. Well when you say I retained that balance in my possession, I don’t know what you mean by that statement. Would you amplify that?”
At this point the trial judge refused to permit this line of testimony to continue •because the amount in question was not listed in the inventory. We think that the remand of the case should also apply to this item so that the husband may be given an opportunity to produce evidence whether he included this sum in the amount of his income on his tax return for 1959 and whether he divided it with his wife.
(4) The wife contends she should not have been debited with $875 for certain community furniture retained by her because she had an agreement with her husband as to how the furniture should be divided. Although the record shows that the husband did take certain items of furniture from the family home, there is no showing there was any agreement that this constituted a final division and settlement. Because the husband was charged for the items of furniture he received we think the trial judge was correct in charging the wife with the community furniture she kept.
(5) The court erred in not ordering the husband to account for furniture costing $510 purchased by him with community funds for use in an apartment into which he moved after the separation. The husband contends that he only bought one bed with community funds, but an audit of Dennis A. Barry & Co., certified public accountants, made at the joint request of husband and wife and introduced into evidence shows the purchase of furniture amounting to $510 for “Wohl Apartment” (where the husband resided) as a community asset. In the absence of any objection to the audit by either party, we believe the husband should be charged
*908 with the $510 which he must return to the community of which, of course, the wife will be the beneficiary to the extent of half thereof.
We now turn to a consideration of the specifications of errors assigned by the husband.
(6) He should not have been ordered to return to the community the sum of $2561.17, consisting of two sums he withdrew from the Registry of the Court. Although these sums were spent in the conduct of the community mortgage business, the trial judge ordered their return to the community because the wife did not share in the profits of the mortgage business. However, again reverting to the 1959 income tax return of the husband, his wife was entitled to half of 1%2ths of the profits of the mortgage business but he alleged that this sum was reported by her in a separate income tax return. Again, we are faced with the problem of whether the wife received her share. The remand of the case should also apply to this item as further evidence is needed in order to properly adjudicate the matter. The evidence, of course, should include the wife’s 1959 income tax return and either party may introduce any other evidence which may tend to substantiate or disprove the declarations and statements of the husband.
(7) The husband contends the trial judge erred in not crediting him with $399 he paid on July 3, 1963, for 1959 state income tax on community income due the State of Louisiana, which amount included penalties and interest. The wife cites Messersmith v. Messersmith, supra, as authority for her position that the payment of income taxes on community income made after the separation from bed and board is not chargeable to .the community. The court stated:
“Hence, all sums expended for income tax prior to the rendition of judgment of separation from bed and board, March 25, 1949, must be held to be debts of the community and to be payable out of community funds. And it logically follows that once the community became dissolved, in the instant case on March 25, 1949, any sum expended by the husband for tax due on revenue belonging to him and his wife cannot be held chargeable against the community but is dis-chargeable by both in proportion to their undivided rights and interest in the taxable income.” •
The rule announced would seem to be inequitable, because taxes accruing while the community was intact is a community debt even though paid after the separation from bed and board, and should be borne by the community without requiring a separate action by the one spouse against the other for the payment of his share of the tax. However, in the instant case, this rule probably does not prejudice the husband. It must be remembered that he filed a separate federal tax return in which he declared his wife was also filing a separate return reporting her half of the community income. The only correspondence with the Department of Revenue, State of Louisiana, concerning state income tax in the record is addressed to the husband alone, and there is no indication that the tax included any amount due by the wife on her separate return. However, even if this is not the case, we are bound by the Supreme Court ruling in Messersmith v. Messersmith, supra, and cannot allow this item to be considered in the settlement of community affairs.
(8) The husband contends that the $1000 down-payment out of community funds made on a home of his own should not be returned to the community. The evidence points up that he did employ said amount for the purchase of separate property and we know of no reason why this item should not be ordered returned to the community.
*909 For the reasons assigned, it is ordered, adjudged and decreed:
That the homologation of the notary’s proces verbal of the partition be avoided and set aside;
That any allowance to the wife on account of her payment of the mortgage resting on the property after she purchased at the tax lien sale, discussed in item 1 of the above opinion, is disapproved, and her claim therefor is dismissed;
That the rulings on items 4, 7 and 8 be approved;
That the trial court’s ruling on item 5 be set aside and the husband is required to account for the $510 involved therein;
That the trial court’s rulings on items 2, 3 and 6, discussed in the above opinion, be set aside, and as to those items the case is remanded for further hearing thereon and for the reception of whatever additional evidence the parties see fit to introduce, the trial judge being instructed, after hearing such evidence and considering the evidence already adduced, to render such judgment on each item as is proper; and
That the judgments appealed from and the notary’s proces verbal be amended in accordance with the above and also as per the rulings of the trial judge on the items remanded for further hearing.
Each party is to bear the costs of his respective appeals.
Reversed in part, rendered in part, and remanded.