579 So.2d 1046 (1991)
SUCCESSION OF Harry Orin NETTERVILLE.
No. 90-CA-0474.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 1991.
Rehearing Denied June 18, 1991.
*1047 Amato & Creely, Michael F. Somoza, Gretna, for plaintiff-appellee Alden Bruce Netterville, as Administrator of the Estate of Harry Orin Netterville.
Claudia Sue Dunn, Pickering, Cotogno, Delsa & Dunn, New Orleans, for defendant-appellant Bernadette Juncker Netterville.
Before GARRISON, BYRNES and WILLIAMS, JJ.
WILLIAMS, Judge.
The surviving spouse appeals arguing the trial court erred, first, in finding the deceased did not name a beneficiary to certain pension plans and second, in failing to find that "ERISA" preempts state community property laws. We affirm in part and remand in part.
The decedent married his first wife in 1950. They were divorced in December, 1982. He married his second and surviving spouse on February 19, 1983 and was living with her when he died. He died intestate on March 25, 1986. He was employed by the George A. Hormel Company from 1950 until his death. During that employment period, he acquired an interest in four benefit plans.[1]
This matter was brought before the trial court on a joint motion of counsel for the administrator Alden Bruce Netterville, the decedent's son; Jean Kemp Netterville, the first spouse; and Bernadette Junker Netterville, surviving spouse, to determine ownership of the pension plans. The trial court found that the decedent declined to name a beneficiary and that ERISA did not preempt Louisiana community property law. The proceeds of the first three plans were distributed according to the formula set out in Sims v. Sims, 358 So.2d 919 (La.1978).[2] The proceeds of the fourth plan were divided equally between the surviving spouse and the decedent's estate. The decedent's interest fell to his children as his intestate heirs.
First, the appellant argues the trial court erred in finding the decedent declined to name a beneficiary of the plans. We agree. The first plan, The George A. Hormel and Company Joint Earnings Profit Sharing Trust Agreement, names the surviving spouse as a participant's beneficiary if a special designation has not been made. (Section 7.4, Designation of Beneficiaries). The second plan, The Employees Pension Plan, states a survivor annuity shall be payable to the surviving spouse. (Section 5, Death Benefits). The third plan, "The Old Pension Plan," provides that the participant's surviving spouse is the automatic beneficiary, in lieu of a beneficiary designation. (Section 7.4.2). The final plan, the PAYSOP plan, provides for the surviving spouse as beneficiary. (Section 7.5.1) Thus, by operation of the plans the surviving spouse should be recognized as the beneficiary.
Despite the fact that the decedent, by operation of the provisions of the plan, named a beneficiary, the beneficiary is obligated to recognize the rights of the first *1048 spouse and the forced heirs. In T.L. James & Co. v. Montgomery, 332 So.2d 834 (La. 1976), the Supreme Court of Louisiana recognized the contractual beneficiary receives full ownership of any proceeds designated to him. However, the court also found that although the beneficiary receives the full ownership of the proceeds, he does so with the obligation to account to any complaining forced heir or spouse in community if his receipt of the proceeds violates either the forced heir's legitime or the spouse's community ownership rights. Id. at 855. Therefore, though the surviving spouse should be recognized as the beneficiary of the plans, she is accountable to the claims of the decedent's first wife and his forced heirs.
Second, the appellant contends the trial court erred in failing to recognize the preemption of ERISA over Louisiana Community Property Laws. We disagree and affirm. The United States Supreme Court has held that state domestic relations laws are not to be preempted unless Congress has "positively required by direct enactment" that state law be preempted. Hisquierdo v. Hisquierdo, 439 U.S. 572, 581, 99 S.Ct. 802, 808, 59 L.Ed.2d 1 (1979). Under this standard the state law must not only conflict with the federal law, it must do "`major damage' to `clear and substantial' federal interests before the Supremacy Clause will demand that state law be overridden." Id.
In United Association of Journeymen, Etc. v. Myers, 488 F.Supp. 704 (M.D., La. 1980), affirmed at 645 F.2d 532 (5th Cir. 1981), the federal district court held that ERISA does not preempt state community property laws. The court stated that the legislative history shows the congressional desire to preempt state law broadly, but only those laws that "relate to employee benefit plans." Id. at 712, citing 29 U.S.C. 1144(a). Finally, the court determined that the federal law was designed to protect these employees from outsiders, and not to change the relationship between husband and wife or parent and child. Id.
The appellant argues that the Retirement Equity Act of 1984 (REA) clearly expresses Congress' intention to preempt state community property laws. We disagree. The legislative history of the REA indicates, in general, that the bill creates an exception to 29 U.S.C. 1144(a), ERISA's preemption provision, with respect to certain domestic relations orders called Qualified Domestic Relations Orders.[3] 1984 U.S.Code Cong. & Admin.News, 2547, 2565. We find that the REA does not express Congress' intent to preempt state community property laws. In fact, it limits the scope of ERISA's preemption provision. Thus, the trial court did not err in applying Louisiana law.
The Supreme Court of Louisiana in T.L. James and Sims held both private and statutory pension proceeds to be community property. In T.L. James, on rehearing Justice Tate stated that,
Each contribution of the employer to the funds entitles the employee or his beneficiary to share subsequently in the funds' proceeds; when made during the community, the property right to share ultimately in the proceeds thereby acquired by the wage earner, is acquired during the marriage, Civil Code Article 2402 and is thus a community asset. Civil Code Article 2334; Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169 (1956). Therefore, the value of the right to share proportionately in the fund, which right is contractually acquired by virtue of each contribution, falls into the community during which the contribution is made; for by each contribution, when made, the employee (or his beneficiary or estate) had acquired a right to share pro rata in the proceeds ultimately payable from the funds to the employee or his contractual beneficiary or his estate.

*1049 The value of the right to share in the retirement and profit-sharing funds is an incorporeal, movable right. When acquired during the existence of marriage, the right-to-share is a community asset, which, at the dissolution of the community, must be so classifiedeven though at the time acquired or at the time of dissolution of a community, the right has no marketable or redeemable cash value, and even though the contractual right to receive money or other benefits is due in the future and is contingent upon the happening of an event at an uncertain time. Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, 174-175 (1956). When a community is dissolved, the employee's spouse is thus entitled to be recognized as the owner of one-half the value of the right-to-share, insofar as attributable to the contributions paid into the fund as deferred compensation to the employee during the existence of the community (i.e. even though it may not by the contract be payable at the time). Id.; Laffitte v. Laffitte, 253 So.2d 120 (La.App.2d Cir.1971), noted 33 La.L.Rev. 222-23 (1973). However, when the proceeds do become payable under the contract to the employee or his beneficiary or estate, the spouse is entitled at the time to receive payment as owner of her share of the proceeds, based upon the value of the right to share acquired during the community formerly existing between her and the wage earner. T.L. James, at 851-852.
The proper method of partitioning a retirement plan (and by analogy from T.L. James, a profit-sharing plan) is set forth in Sims at 358 So.2d 924. The formula is as follows:
Portion of pension
attributable to creditable
service during existence of
community × 1/2 × monthly annuity
Pension attributable to
total creditable service
The first plan, the George A. Hormel Company Profit Sharing Plan, was initiated in 1956 by the company and is a defined contribution plan. The company makes discretionary annual contributions to each employee's account. The amount of the contribution is based upon the employee's annual wage. The plan, as discussed above, names the surviving spouse as the beneficiary absent an assignment. However, under James, although the appellant should receive full ownership of the proceeds, she must account to the first spouse for her community ownership rights and the forced heirs if their legitime has been impinged. It appears that the trial court did not err in applying the Sims formula to determine the first spouse's community ownership rights. However, since we find, as discussed above, that the plan does indeed establish the appellant as beneficiary, the decedent's half of the community does not fall to his forced heirs except to the extent that their legitime has been impinged. Because the trial court has not determined the amount of the decedent's entire estate, it is impossible to determine whether the forced heirs' legitime has been impinged. The trial court has in fact only partially partitioned the first community. Therefore, the case is remanded to the trial court for an accounting of the total value of decedent's estate. If at the time it appears the forced heirs' legitime has been impinged, the surviving spouse should account to the forced heirs for the amount of their legitime.
The second plan, The Exempt Employee Pension Plan, provides for a pension payable on the retirement of the employee based upon years of service. Appellant contends the trial court erred in failing to recognize the preemption of federal laws requiring payment of the survivor's annuity to the surviving spouse. Appellant relies on Matter of Succession of Sims, 464 So.2d 991 (La.App. 1st Cir.1985) and Bender v. Marshall, 513 So.2d 369 (La.App. 4th Cir.1987), writ denied 514 So.2d 1180 (La. 1987), to suggest that ERISA preempts state law in the area of survivor's annuities. However, Succession of Sims, and Bender are distinguishable on the facts. Succession of Sims, and Bender, involve federal Retirement Plans for Federal Government workers. The court in Succession of Sims found that federal statutes and regulations dealing with survivor annuities *1050 for spouses of deceased federal civil service employees alone determine who is entitled to a survivor's annuity and exempt that annuity from execution, levy, attachment, or other legal process "except as may be provided by Federal Laws". Id. at 1001. This case involves private retirement plans under ERISA and thus Succession of Sims and Bender are not controlling. As with the first plan, the trial court properly applied the Sims formula to determine the amount appellant is accountable to the first spouse. However, this court cannot determine whether the forced heirs' legitime has been impinged without an accounting of the decedent's entire estate.
The third plan, The Old Profit Sharing Plan, was only in effect during the existence of the first community. By the terms of the plan, the surviving spouse is beneficiary in the absence of a contrary beneficiary designation. However, pursuant to James, she must account to the first spouse for the total value of the proceeds subject to any claims by the forced heirs which should be determined by the trial court on remand.
The fourth plan, The Hormel Paysop Plan, approved and adopted effective October 27, 1985, is entirely the property of the second community, because the only contributions were made during the existence of the second community. The surviving spouse is obligated to account to the forced heirs for any impingement of their legitime.
For the assigned reasons, we affirm in part and remand.
AFFIRMED IN PART AND REMANDED.
NOTES
[1] The plans are, first, The George A. Hormel and Company Joint Earnings Profit Sharing Trust Agreement, second, The Employees Pension Plan, third, "The Old Pension Plan" and finally, The PAYSOP Plan.
[2] of pension
attributable to creditable
service during existence of the
community × 1/2 monthy annuity
Pension attributable to total
creditable service

[3] 29 U.S.C. 1144(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.